## 2433. HOLLAND *v.* THE STATE.

1. There was no error in overruling the demurrer. An indictment for robbery, which alleges that the accused "did unlawfully, and with force and arms, wrongfully, fraudulently, and violently take from the person of Bob White ten dollars, the property of the said White, without the

consent of the owner, by force and intimidation," etc., clearly and sufficiently charges the offense of robbery. The charge is substantially in the language of section 151 of the Penal Code of 1895, defining the offense. The word "fraudulently," in the connection in which it is used, implies an intent to steal.

2. The evidence authorized the conviction of the defendant, and there was no error in refusing a new trial. .

DECIDED SEPTEMBER 6, 1910.

Indictment for robbery; from Whitfield superior court—Judge Fite. January 15, 1910.

*George G. Glenn,* for plaintiff in error.

*Thomas C. Milner, solicitor-general, George W. Stevens,* contra.

RUSSELL, J. There was no merit in the demurrer, to the overruling of which defendant excepted pendente lite. The presentment was against five defendants, and charged the offense of robbery, alleging that the defendants "did unlawfully, and with force and arms, wrongfully, fraudulently, and violently take from the person of Bob White ten dollars, the property of the said Bob White, without the consent of the owner, by force and intimidation, contrary to the laws of said State, the good order, peace, and dignity thereof." The demurrer raised the point that the presentment was fatally defective, because it did not charge that the ten dollars was taken with intent to steal. As we have pointed out several times heretofore, the intent to steal is implied wherever a fraudulent taking of personal property of another is alleged; but even if this be not true, the indictment was sufficiently technical, under the provision of section 929 of the Penal Code of 1895, because the charge was substantially and practically in the language of the section defining the offense of robbery (Id. § 151).

The facts in this case, briefly stated, are as follows: White, the prosecutor, killed a dog belonging to the defendant Charles Holland Sr. It is not necessary to state the circumstances under which the killing took place, because, according to the testimony for the State, the prosecutor might have been justified in supposing that the dog was mad, while, according to the defendant's view of the case, the dog was killed without justification. The defendant made a demand upon the prosecutor to pay for his dog, almost immediately after the killing. When he made his demand, according to the testimony for the State, he was accompanied by four of his sons and a friend. Before coming to the point of a demand for pay-

ment, he had made violent threats to the prosecutor, and challenged the prosecutor to come into the street and shoot the matter out with him. It also appears that he or one of his companions had just knocked on the head the person who told the prosecutor that the dog was mad, and the prosecutor knew this. The prosecutor could not satisfy their demands otherwise than by instant payment of the ten dollars which the defendant demanded for his dog, although he protested against it. He had been overtaken on the street and was halted by the defendant, who had his pistol in hand, and who raised the pistol and cocked it and said, "We are going to have pay for our dog, or we are going to settle with you." The prosecutor told him that he did not have a cent, and asked him to come to his store after dinner. The defendant raised his gun and said, "No, we are going to have it here." The prosecutor begged the defendant to wait a minute and see if he could not get the money, and went into the drug store and asked the loan of the money, but when the drug clerk examined the cash drawer, they did not have it. The defendant followed the prosecutor to the door, and from there up to the bank door. The prosecutor hurried into the bank and said, "Give me ten dollars quick. Hand it to me, and I will tell you later." To this the cashier replied, "Give me a check," and, upon the prosecutor's saying to the cashier, "You write it," the cashier handed him a ten-dollar gold piece, which the prosecutor handed to the defendant's son, who held out his hand for it, while the defendant kept his hand upon his gun.

We have only given a resume of a portion of the State's evidence. It may be that the prosecutor was not forced by intimidation to give the ten dollars to the defendant, but he swore that he was; and, as every phase of the case was brought out in the testimony, it was for the jury to say whether or not the money was taken from the prosecutor by force or intimidation. Under the testimony, the outlines of which we have given above, it is not for this court to say that the evidence was insufficient to authorize the verdict.

There was no error in any of the instructions of the trial judge of which complaint is made. The mere statement of the judge that the jury may believe the witness or witnesses who have the best means of knowing the facts and the least inducement to swear falsely did not enjoin upon the jury the duty of believing those witnesses who had the least inducement to swear falsely or the best

opportunity of knowing the facts. If the court had said that the jury *must* believe them, it would have been error. However, this part of the charge followed instructions which gave the jury even fuller liberty to weigh for themselves and pass upon the testimony.

Counsel for the defendant requested the court to charge the jury, that to constitute robbery, there must have been an intention on the part of the defendant to steal, and that if the ten dollars was accepted by the defendant on a bona fide claim of right, in payment of a debt which he claimed the prosecutor owed him, he would not be guilty. The judge, after giving the charge requested, added the following instruction: "I charge you that, provided that you do not find that he (the prosecutor) paid it over by intimidation," and followed this by saying: "The words 'with intent to steal' mean, to wrongfully appropriate to their own use; and if they, by intimidation, forced him, or he, from intimidation, paid over the money and they took it, intending to use it or keep it, then they would be guilty, otherwise they would not be; as I have charged you heretofore." The court did not err in these additional instructions. *Judgment affirmed.*