## Wytheville.

### BUTTS v. COMMONWEALTH.

#### June 17, 1926.

1. CRIMINAL LAW—*Speedy Trial—Immediate Trial—Negligence of the Prosecution.*—Section 8 of the Constitution of 1902 guarantees to every one accused of crime a speedy trial. This provision must have a reasonable interpretation. A speedy trial does not entitle the accused to an immediate trial. The State is entitled to a reasonable opportunity to fairly prosecute its charge against the accused. All that can be asked is that the trial shall take place as soon as practical after the indictment is found and the State had a reasonable opportunity to prepare for trial. Any time after this, arising from negligence or laches on the part of the prosecution, without fault or participation on the part of the accused and without his consent, is a violation of the constitutional provision.

2. CRIMINAL LAW—*Speedy Trial—Constitutional Provision not Self Operative.*—Section 8 of the Constitution of 1902 guaranteeing a speedy trial is not self operative. It may be claimed, or it may be waived.

3. CRIMINAL LAW—*Speedy Trial—Three Terms of the Circuit Court or Four of the Corporation Court—Section 4926 of the Code of 1919.*—Section 4926 of the Code of 1919 provides that every person held in any court for trial under indictment shall be discharged from prosecution if there be three regular terms of the circuit court or four of the corporation or hustings court in which the case is pending after he is so held without trial. This legislative interpretation of what constitutes a speedy trial, as guaranteed by section 8 of the Constitution of 1902, has been often approved by the Supreme Court of Appeals.

4. CRIMINAL LAW—*Speedy Trial—Three Terms of the Circuit Court or Four of the Corporation Court—Section 4926 of the Code of 1919.*—Under section 4926 of the Code of 1919, the term at which the indictment

is found is excluded from the calculation, and after this the Commonwealth has three regular terms of the circuit court, at any one of which the accused may be tried without offering any excuse for delay; but after the expiration of these three terms, unless the Commonwealth shall bring herself within the exceptions mentioned in section 4926 the statute provides that the accused shall be forever discharged from prosecution for the offense. The accused, however, must avail himself of the provision made for his benefit.

5. CRIMINAL LAW—*Speedy Trial—Section 4926 of the Code of 1919—Whether there must be a Complete Trial with Final Judgment.*—Under section 4926 of the Code of 1919 providing that accused shall be discharged after three regular terms of the circuit court or four of the corporation or hustings court without a trial, the trial need not be a complete trial in which final judgment must be entered not later than during the third term; and, where the accused is actually brought to trial within the time required by the statute, but from some adventitious cause, without fault on the part of the Commonwealth, or where a further delay for a reasonable time is necessary to consider some motion or application of the accused, so that final judgment cannot be entered during such term, the statute has been sufficiently complied with.

6. CRIMINAL LAW—*Speedy Trial—Delaying Judgment for Thirty-Three Months—Case at Bar.*—In the instant case the delay between the rendition of the verdict and the final judgment was thirty-three months and the record disclosed no reason for the delay. If the statute had provided that a trial might have been deferred for that length of time it would have violated the constitutional provision for a speedy trial; and the withholding of judgment by the trial court for that length of time, without reason, or excuse therefor, was equally a violation of the constitutional right of the accused; and, if he had claimed his right, it should have been accorded him.

7. CRIMINAL LAW—*Speedy Trial—Delaying Judgment for Thirty-Three Months—Waiver by Accused—Case at Bar.*—In the instant case there was a delay of thirty-three months between the verdict and final judgment. The defendant could have moved the trial court for a discharge from further prosecution for the offense or he could have applied to the Supreme Court of Appeals for a mandamus to compel the trial court at an earlier date to proceed to judgment, or he might have applied for a writ of *habeas corpus*, but he did neither; and it was too late for him to assert his right to a discharge from prosecution for the first time in the Supreme Court of Appeals on a record involving the merits of the case.

8. CRIMINAL LAW—*Speedy Trial—Waiver—Application for Discharge under Section 4926 of the Code of 1919 Distinct from the Case on its Merits.*—The application for the discharge under section 4926 of the Code of 1919 providing for a discharge of one held for crime after three

regular terms of the circuit court or four terms of the corporation or hustings court, is wholly distinct from, and independent of, the case on its merits, and the failure to invoke the operation of the constitutional provision is a waiver of the protection afforded thereby.

9. Criminal Law—*Waiver of Constitutional Rights—Speedy Trial—Consent to a Continuance—Section 4926 of the Code of 1919.*—A prisoner may waive many of his constitutional rights. There are rights which the prisoner can waive neither by counsel nor in person, and there are other rights which the prisoner can waive either in person or by counsel. They are the mere incidents connected with the trial, and these include consent to a continuance which would prevent the operation of section 4926 of the Code of 1919.

10. Constitutional Law—*Speedy Trial—Waiver of Right.*—The right of the accused to a discharge for the failure of the prosecution to put him on trial within the required time may be waived by his own conduct. If he does not make a demand for a trial or if he does not make some kind of an effort to secure a speedy trial, he will not be in a position to demand a discharge because of delay in the prosecution.

11. Robbery—*Definition—Common Law.*—The Virginia statute as to robbery does not define robbery, so under section 2 of the Code of 1919 we have to look to the common law for the definition of robbery.

12. Robbery—*Definition.*—Robbery is an aggravated form of larcency, but is treated as a distinctive crime. It is the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.

13. Robbery—*Elements.*—To constitute robbery in addition to force or threats, there must also be the elements of larcency.

14. Robbery—*Intent—Property of the Taker.*—There can be no larceny of the property taken if it, in fact, is the property of the taker, or if he, in good faith, believed it is his, for there is lacking the criminal intent which is an essential element of larceny. It is immaterial whether the taker is to benefit thereby or not.

15. Larceny—*Animus Furandi.*—To constitute larceny, the taking and carrying away of the property of another must be done with criminal intent, and this is the *animus furandi* referred to in the decided cases.

16. Larceny—*Robbery—Destruction of Property—Property of Another—Destroyer Believing Property to be His Own.*—If A, with criminal intent, takes the pistol of B, and breaks it to pieces, so that it is worthless, A is guilty of the larceny of B's pistol. If, however, the pistol is the property of A, or if A, in good faith, believes it belongs to him, although the taking is by trespass, yet he is not guilty of larceny by destroying it, because there was no criminal intent on A's part to deprive B permanently of a pistol that belonged to him, but to destroy what A, in good faith, believed to be his

own property. The rule is not difficult of application to specific tangible personal property. If A has title to it, or honestly believes he has, the taking by force is neither larceny nor robbery.

17. Larceny—*Robbery—Collecting Debt at the Point of a Pistol.*—One collecting an admitted debt by use of threats accompanied by the presentation of fire-arms against the debtor, is guilty of an aggravated assault but not of robbery, where there is no dishonest or criminal intent.

18. Robbery—*Collecting Admitted Debt by Threats and Presentation of a Pistol—Case at Bar.*—In the instant case defendant was discharged by his walking boss, he demanded immediate payment for the amount due him, but was told that Saturday was pay day and that he would have to return Saturday to get his money. To this he objected and left the premises peacefully, but put a pistol into his pocket and returned to the plant in quest of the superintendent. He told the facts of his discharge to the superintendent and requested payment. There was no question over the amount due, $5.00. Upon the refusal of payment until Saturday, the accused became profane and pointed the pistol at the superintendent and demanded that he be paid his wages then and there. The accused and the superintendent then went into the latter's office to ascertain the accused's time, the accused still holding the pistol. The defendant's time card was then produced and the sperintendent took $5.00 of his own money and handed it to accused.

*Held:* That accused, while guilty of aggravated assault, was not guilty of robbery.

19. Larceny—*Robbery—Animus Furandi—Bona Fide Claim of Right.*— There can be no *animus furandi*, or criminal intent, where the property is taken under a *bona fide* claim of right.

20. Robbery—*Bone Fide Claim—Questions of Law and Fact.*—Usually in prosecutions of larceny and robbery, the question of whether the property was taken under a *bona fide* claim of right is one for the jury. But where, as in the instant case, the facts are undisputed, and only one conclusion could be fairly drawn therefrom by reasonable men, it is a question of law for the court. If different conclusions, however, may be fairly drawn by reasonable men from established or admitted facts, the question is still one for the jury under proper instructions from the court.

21. Robbery—*Bone Fide Claim of Right—Question of Law and Fact—Case at Bar.*—In the instant case, a prosecution for robbery, where accused collected from the superintendent of his employer his wages at the point of a pistol, the judge of the trial court took the view that the debt owing to accused was not due until Saturday following the day he was discharged, and as the demand was made before maturity of his claim, it was a case of robbery. Even if accused knew that Saturday was the regular pay day, he had a right to suppose that

that applied only to the employees in the continued employment of the company and not to those discharged. Upon his discharge on Wednesday, he in good faith believed that he was entitled to his pay. He apparently acted in good faith and there was nothing in the record to contradict him.

*Held:* That good faith negatived the idea of a felonious intent.

22. Best and Secondary Evidence—*Written Instruments—Witness Testifying as to His Recollections—Time Card—Case at Bar.*—In the instant case defendant was accused of robbing the superintendent of his employer. Defendant claimed that he only claimed wages due him by his employer. A witness was permitted to testify upon his recollection of the amount due accused as shown by accused's time card. The time card could have been produced within an hour and counsel for accused asked that it should be produced. The time card was contemporaneous written evidence, made by the agent of the prosecutor, of a material fact of vital importance, and was the best evidence of that fact. Even if the witness had been positive in his recollection of the contents of the time card, his testimony as to such contents would not have been admissible, as the existence and ready accessibility of the time card was clearly shown, in fact was admitted.

23. Best and Secondary Evidence—*Contents of a Written Instrument—General Rule.*—It is elementary law that where the contents of a writing are desired to be proved, the writing itself must be produced, or its absence sufficiently accounted for before other evidence of its contents can be admitted.

Error to a judgment of the Circuit Court of Norfolk county.

*Reversed.*

The opinion states the case.

*Vincent L. Parker* and *Wm. G. Maupin,* for the plaintiff in error.

*Jno. R. Saunders,* Attorney General, *Leon M. Bazile* and *Lewis H. Machen,* Assistant Attorneys General, for the Commonwealth.

Burks, J., delivered the opinion of the court.

Louis Butts, the plaintiff in error, was convicted of attempt at robbery and sentenced to the penitentiary for two years.   The verdict of the jury was found on the 12th day of February, 1923, and a motion was promptly made for a new trial, but was not passed on until the 21st day of November, 1925, when the judgment here complained of was entered.

The following errors are assigned:

"First:   The court erred in entering judgment on the verdict on November 21, 1925, because the accused was then entitled to be forever discharged from prosecution for the offense for which he was indicted.

"Second: The court erred in overruling the motion of the accused to set aside the verdict as contrary to the law and the evidence, because the evidence shows that there was no robbery or attempted robbery by the accused.

"Third: The court erred in admitting parol evidence of Zimmer and Carey as to the contents of the time card."

Section 8 of the Constitution guarantees to everyone accused of crime a "speedy trial."   Similar provisions, constitutional or statutory, exist in most, if not all, of the States.   They are said to be based on the English *habeas corpus* act.   Beale's Crim. Pl. & Pr., sec. 212.

In *In re Begerow*, 133 Cal. 349, 65 Pac. 828, 56 L. R. A. 513, 85 Am. St. Rep. 178, it is said:   "It is well to remember that this case involves fundamental rights, and is of universal interest.   Around those rights the English have waged. their great battle for liberty. Without the narration of the conflicts to which they have given rise, the history of the English people would be a dull affair.   The right of the government with reference to persons accused of crime, has been, and is yet, a matter of great consideration.   It led to

the agitation which wrung from power the Great Charter, the Petition of Right, and the *habeas corpus* act. All of the great achievements in favor of individual liberty, of which the English people are so justly proud, may be said to have come through contests over the rights of persons imprisoned for supposed crime."

[1, 2] This right of personal liberty, of freedom from oppression under color of the law, acquired at such a price, has been carefully safeguarded by the Constitution of this State and has constituted a part of its Bill of Rights from the earliest history of the Commonwealth, and its enforcement is not less important today than it was then. The provision, however, must have a reasonable interpretation. A "speedy trial" does not entitle the accused to an immediate trial. The State is entitled to a reasonable opportunity to fairly prosecute its charge against the accused. All that can be asked is that the trial shall take place as soon as practicable after the indictment is found and the State has had a reasonable opportunity to prepare for the trial. Any time after this, arising from negligence or laches on the part of the prosecution, without fault or participation on the part of the accused and without his consent, is a violation of the constitutional provision. The provision, however, as we shall see, is not self-operative. It may be claimed, or it may be waived.

[3] What constitutes a "speedy trial" within the meaning of the Constitution has been interpreted by the legislature in section 4926 of the Code, the substance of which has long been a part of the statute law of this State. That section declares: "Every person against whom an indictment is found charging a felony and held in any court for trial, whether he be in custody or not, shall be forever discharged from

prosecution for the offense if there be three regular terms of the circuit or four of the corporation or hustings courts in which the case is pending after he is so held without a trial, unless the failure to try him was caused by his insanity or by the witnesses for the Commonwealth being enticed or kept away or prevented from attending by sickness or inevitable accident, or by continuance granted on motion of the accused, or by reason of his escaping from jail or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict, or where there be no court held at the regular term, or where there is court held and for any reason it would be injudicious in the opinion of the court to have jurors and witnesses summoned for that term, which reason shall be specially spread upon the records of the court; but the time during the pendency of any appeal in any appellate court shall not be included as applying to the provisions of this section.''

This legislative interpretation has often been approved by this court. *Commonwealth* v. *Adcock*, 8 Gratt. (49 Va.) 661; *Brown* v. *Epps*, 91 Va. 726, 21 S. E. 119, 27 L. R. A. 676; *Nicholas* v. *Commonwealth*, 91 Va. 741, 21 S. E. 364; *Benton* v. *Commonwealth*, 91 Va. 786, 21 S. E. 495; *Kibler* v. *Commonwealth*, 94 Va. 804, 26 S. E. 858; *Wadley* v. *Commonwealth*, 98 Va. 803, 35 S. E. 452.

[4] The section quoted affords protection against two very grave wrongs; unnecessary imprisonment and unnecessary delay in bringing the accused to trial, whether in custody or not. At present we have to deal only with the latter. The statute gives the Commonwealth three regular terms of a circuit court after the accused is held for trial within which the Commonwealth may afford such trial.* The term at which the indictment

---

*The trial in the instant case was in the circuit court.

is found is excluded from the calculation (*Kibler* v. *Commonwealth*), and after this the Commonwealth has three regular terms of the circuit court, at any one of which the accused may be tried without offering any excuse for delay; but after the expiration of these three terms, unless the Commonwealth shall bring herself within the exceptions mentioned in section 4926 the statute provides that the accused "*shall be forever discharged from prosecution for the offense.*" In other words, it is a legislative pardon for the offense if the trial is not had within the time prescribed by the statute; but the accused never availed himself of the provision made for his benefit.

[5] It is earnestly insisted that the trial mentioned in the section must be a completed trial in which final judgment must be entered not later than during the third term aforesaid. Many cases have been cited defining the word "trial," but they throw little light on the meaning of the word as used in the section quoted. The object of the statute is to secure a "speedy trial," and where the accused is actually brought to trial within the time required by the statute, but from some adventitious cause, without fault on the part of the Commonwealth, or where a further delay for a reasonable time is necessary to consider some motion or application of the accused, so that final judgment cannot be entered during such term, the statute has been sufficiently complied with. In enumerating certain exceptions to the operation of the statute, it was not intended to exclude others of a like nature, nor delays made necessary by motions or other applications of the accused. *Wadley* v. *Commonwealth,* supra.

[6, 7, 8] In the instant case the delay between the rendition of the verdict and the final judgment was thirty-three months, and the record discloses no reason

for the delay.    We do not doubt that if the statute had provided that a trial might have been deferred for that length of time, it would have violated the constitutional provisions for a "speedy trial."    The withholding of judgment by the trial court for that length of time, without reason or excuse therefor, was equally a violation of the constitutional right of the accused, and if he had claimed his right it should have been accorded him; but he did not do so, and must be deemed to have waived it.    He could have moved the trial court for a discharge from further prosecution for the offense, as was done in *Sands* v. *Commonwealth*, 20 Gratt. (61 Va.) 800, and *Ribler* v. *Commonwealth*, *supra;* or he could have applied to this court for a mandamus to have compelled the trial court at an earlier date to proceed to judgment; or for a writ of *habeas corpus*, as was done in *Davis* v. *Davis*, 112 Va. 904, 73 S. E. 946.    But he did neither, and now asserts his right to a discharge from prosecution for the first time in this court, on a record involving the merits of its case.    The application for the discharge is wholly distinct from, and independent of, the case on its merits, and the failure to invoke the operation of the constitutional provision was a waiver of the protection afforded thereby.

[9] In *Brown* v. *Epes*, 91 Va. 726, 21 S. E. 119, 27 L. R. A. 676, it is said:  "That a prisoner may waive many of his constitutional rights is beyond a doubt."

In *Kibler* v. *Commonwealth*, 94 Va. 804, 811, 26 S. E. 858, 859, construing this statute, it is said:  "There are rights which the prisoner can waive neither by counsel nor in person.    There are other rights which the prisoner can waive either in person or by counsel.    They are the mere incidents connected with the trial," and these include consent to a continuance which would prevent the operation of section 4926 of the Code.

In *State* v. *Killison*, 56 W. Va. 690, 692, 47 S. E. 166, it is plainly intimated, if not decided, that the constitutional privilege of a "speedy trial" must be claimed or else it will be deemed to have been waived, and that the claim comes too late after trial and conviction.

[10] In 8 R. C. L. 74, it is said: "The right of the accused to a discharge for the failure of the prosecution to put him on trial within the required time may be waived by his own conduct. If he does not make a demand for a trial   *   *   or if he does not make some kind of an effort to secure a speedy trial, he will not be in a position to demand a discharge because of delay in the prosecution." To the same effect see note, 85 Am. St. Rep. 197; *People* v. *Hawkins*, 127 Cal. 372, 59 Pac. 697.

In a note to *Head* v. *State*, 44 L. R. A. (N. S.) 871, a number of cases are cited for the proposition that "one accused of crime will not be entitled to a discharge because of delay in prosecution, unless it appears that he has either made a demand for a trial, or resisted a continuance of the case, or at least made some other effort to secure a speedy trial."

The first assignment of error must, therefore, be overruled.

On the motion to set aside the verdict, the facts are that the accused had worked for the Royal Guano Company for two days and a half at $2.00 a day when he was discharged by his walking boss. He thereupon demanded immediate payment of the amount due him, but was told that Saturday was pay day and that he would have to return on Saturday to get his money, and he was ordered off the premises. He objected to returning on Saturday because it would entail the loss of a day, and further because he thought that if he was discharged he was entitled to immediate payment for

the work done. He left the premises, however, peaceably, but, after changing his clothes, he put his pistol in his pocket and returned to the plant in quest of the superintendent. When he found the superintendent, he stated to him the facts about his discharge, and demanded payment of what was due him. He was again told that Saturday was pay day, and that he would have to return on that day to get his money. There was no controversy over the amount due, and it is conceded on behalf of the Commonwealth that the amount was five dollars. Upon refusal of payment until Saturday, the accused became profane, and pointed a pistol at the superintendent and demanded that "he be paid his wages then and there." The accused and the superintendent then went to the latter's office, the accused still holding the pistol in his hand, to ascertain from the accused's time card how much he had earned. The card was produced, and the superintendent "thereupon took $5.00 of his own money out of his pocket and handed it to the accused, who thereupon at once left the premises." Was this an attempt at robbery?

[11] Our statute does not define robbery, so that we have to look to the common law for the definition. Code, sec. 2.

[12] "Robbery is an aggravated form of larceny, but is treated as a distinctive crime. It is the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." Clark's Crim. Law (2nd ed.), page 323. See also *Houston* v. *Commonwealth*, 87 Va. 257, 12 S. E. 385; *Jordan* v. *Commonwealth*, 25 Gratt. (66 Va.) 943.

[13, 14] In addition to force or threats there must also be the elements of larceny. But there can be no

larceny of the property taken if it, in fact, is the property of the taker, or if he, in good faith, believes it is his, for there is lacking the criminal intent which is an essential element of larceny. It is immaterial whether the taker is to benefit thereby or not.

In *Jordan* v. *Commonwealth*, 25 Gratt (66 Va.) 943, 948, it is said: "It is not essential that the person taking shall intend to appropriate the same to his own use. It is sufficient that his purpose is to deprive the owner wholly of them. For although a taking *lucri causa* is larceny, a taking in order to deprive the owner of his property is equally so."

[15, 16] The taking must, however, be *animo furandi.* Now what is this *animus furandi?* It is generally translated as "an intent to steal." But what is an intent to steal? It is an intent to feloniously deprive the owner permanently of his property. But "feloniously" in this connection simply means "with criminal intent." *Wolverton* v. *Commonwealth*, 75 Va. 909. So that, to constitute larceny, the taking and carrying away of the property of another must be done with criminal intent, and this is the *animus furandi* referred to in the decided cases. If A, with criminal intent, takes the pistol of B, and breaks it to pieces, so that it is worthless, A is guilty of the larceny of B's pistol. If, however, the pistol is the property of A, or if A, in good faith, believes it belongs to him, although the taking is by trespass, yet he is not guilty of larceny by destroying it, because there was no criminal intent on A's part to deprive B permanently of a pistol that belonged to him, but to destroy what A, in good faith, believed to be his own property. The rule is not difficult of application to specific tangible personal property. If A has title to it, or honestly believes he has, the taking by force is neither larceny nor robbery.

[17, 18] But how about collecting an admitted debt by use of threats accompanied by the presentation of firearms against the debtor?   B, a debtor, has in his pocket ten five dollar bills.   His title to each is perfect. He owes A five dollars.   A has not now, and never had, any title or possession of either of the bills.   A presents a pistol to B and says: "Pay me the five dollars you owe me immediately, else I will kill you."   B, out of fear, hands him one of the five dollar bills.   Has not A, by trespass, taken the bill; with intent to deprive B permanently of his property?   Undoubtedly, but with no dishonest or criminal intent, which distinguishes it from the pistol case above mentioned.   He took an unlawful means of collecting his debt, and was guilty of an aggravated assault, but not of robbery, and so the cases hold.

The cases so holding are so numerous that it is not practical to cite them, but many of them are cited in 10 L. R. A. (N. S.) 744, 23 R. C. L. 1144, 13 A. L. R. 142 and 151, 24 Am. & Eng. Ency. Law (2d ed.) 1004, 34 Cyc. 1797.   See also 2 Bish. New Crim. Law, sec. 1162a.

[19] The basis of these decisions is the lack of a criminal intent, as there can be no *animus furandi*, or criminal intent, where the property is taken under a *bona fide* claim of right.   The cases are almost unanimous in so holding.   *Holland* v. *State*, 8 Ga. App. 202, 68 S. E. 861, is seemingly contrary to the general holding.   *Fannin* v. *State*, 51 Tex. Cr. Rep. 41, 10 L. R. A. (N. S.) 744, 123 Am. St. 874, 100 S. W. 916, is directly in conflict with the general doctrine, and the reasoning of that case is strongly supported by the editorial note in 135 Am. St. Rep. 489.   That case, however, was overruled by *Barton* v. *State*, 88 Tex. Cr. Rep. 368, 227 S. W. 317, 13 A. L. R. 147.   So that

the ruling is now practically unanimous.    Some of the cases have gone even further and held that the taking of chattels openly and avowedly as a security for a debt is not larceny.    *Reg.* v. *Wade*, 11 Cox C. C. (Eng.) 549; *Johnson* v. *State*, 73 Ala. 523; *Buchanan* v. *State* (Miss.), 5 So. 617; *Young* v. *State*, 37 Tex. Cr. Rep. 457, 36 S. W. 272; *People* v. *Eastman*, 77 Cal. 171, 19 Pac. 266.

[20] Usually the question of *bona fides* is one for the jury, but where, as in the instant case, the facts are undisputed, and only one conclusion could be fairly drawn therefrom by reasonable men, it is a question of law for the court.    If different conclusions, however, may be fairly drawn by reasonable men from established or admitted facts, the question is still one for the jury under proper instructions from the court. *Davis* v. *McCall*, 133 Va. 487, 506, 113 S. E. 835.    This rule has been often relied on and enforced, though its terms have not always been stated with strict accuracy.

[21] The judge of the trial court took the view that the debt owing to the accused was not due until Saturday following the day of his discharge, and, as the demand was made before the maturity of his claim, it was a case of robbery.    There is but little evidence tending to show that the accused knew that Saturday was pay day, but even if he had known that Saturday was the regular pay day, he had the right to suppose that that applied only to employees in the continued employment of the company, and not those who were discharged, and he testified that as he was discharged on Wednesday and ordered off the premises, he in good faith believed that he was entitled to his pay when his connection with the company was severed. This belief of the accused was entirely reasonable, and, even if unsound, should not of itself have furnished

ground for refusal to set aside the verdict. He apparently acted in good faith and there is noth ng in the record to contradict him.    His good faith negatived the idea of a felonious intent.

The accused never at any time demanded the payment of anything except "his wages up to the time he was discharged."    When he held up the superintendent, they went together to the office to "find out from accused's time card how much he had earned."    The time card was produced, and the superintendent paid him $5.00.

The Commonwealth concedes that, at the first trial, it was shown that the amount due was $5.00.    The second trial took place more than a year after the offense was committed, and the Commonwealth was permitted to prove, over the objection of the accused, that the "witness does not remember the exact amount, but his recollection is that the amount of money that Butts had earned up to the time of his discharge was a few cents under $5.00."    It further appears that the time card was at the plant of the Royster Company and could probably be produced in an hour.    Counsel for the accused objected to the testimony of the witness as to his recollection of the contents of the time card, and offered "to wait until some one could be sent to the plant for the time card, and either proceed with the trial and allow the same to be introduced later, or halt the trial until the card could be produced;" but the court declined the offer, and overruled the objection.    The trial court based its ruling on the failure of the accused to make the objection sooner, while another witness was on the stand.    The failure to make the objection sooner was satisfactorily accounted for, but the explanation is too lengthy to be here inserted. The ruling of the trial court was plainly erroneous.

[22,23] The time card was contemporaneous written evidence, made by the agent of the prosecutor, of a material fact of vital importance, and was the best evidence of that fact. Even if the witness had been positive in his recollection of the contents of the time card, his testimony as to such contents would not have been admissible, as the existence and ready accessibility of the time card was clearly shown, in fact was admitted. It is elementary law that "where the contents of a writing are desired to be proved, the writing itself must be produced, or its absence sufficiently accounted for before other evidence of its contents can be admitted." 1 Greenleaf on Ev. (16th ed.) 682.

Observation and experience have taught us that human memory is very frail, and that the unaided testimony of witnesses is a very unsatisfactory means of establishing facts of long standing. This is especially true when a witness undertakes to give his recollection of the contents of writings, to relate conversations of others, or to give dates or figures. Decided cases, practically without dissent, reaffirm the rule announced by Lord Tenterden nearly a century ago, when he said in substance: "I have always acted most strictly on the rule that what is in writing shall only be proved by the writing itself. My experience has taught me the extreme danger of relying on the recollection of witnesses, however honest, as to the contents of written instruments; they may be so easily misled that I think the purposes of justice require the strict enforcement of the rule." *Vincent* v. *Cole*, 1 Moody & Malkin, 258, 7 L. J. 130.

We are of opinion that the accused waived his constitutional right to a "speedy trial," but that the trial court erred in receiving parol evidence of the contents of the time card aforesaid, and also in not setting

aside the verdict of the jury because it was without evidence to support it.   For these errors the judgment of the trial court will be reversed, the verdict of the jury set aside, and the case remanded for a trial for the assault charged in the indictment.

*Reversed.*