COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Lemons and
          Senior Judge Duff
Argued at Alexandria, Virginia


CARL WESLEY ERNEST WARNER
                                          OPINION BY
v.    Record No. 0982-98-4        JUDGE DONALD W. LEMONS
                                          JUNE 29, 1999
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                  Carleton Penn, Judge Designate

            Barry A. Zweig, Assistant Public Defender
            (Office of the Public Defender, on brief),
            for appellant.

            Donald E. Jeffrey, III, Assistant Attorney
            General (Mark L. Earley, Attorney General;
            Richard B. Campbell, Assistant Attorney
            General, on brief), for appellee.


     Carl Wesley Ernest Warner appeals his bench trial

conviction of feloniously uttering a check with knowledge that

the account on which the check was drawn contained insufficient

funds, a violation of Code § 18.2-181.  On appeal, he contends

that the evidence was insufficient to support his conviction and

that the trial court's admission of hearsay evidence was

reversible error.  We disagree and affirm the conviction.

                      I.  BACKGROUND

     On August 14, 1997, Carl Wesley Ernest Warner, appellant,

an employee of Aliloo Oriental Rugs, requested that he be paid

his weekly wage a day early.  The evidence at trial revealed

that Warner received a check for $231 and attempted to cash it on August 15, 1997.  The bank informed him that the account contained insufficient funds.  Warner told his employer, and his employer gave him a second check for $200.  Warner retained the check for $231.  Warner cashed the $200 check that day.  On August 17, 1997, he cashed the check for $231 at the Aldie Country Store.

In the absence of the owner, Parviz "Paul" Hadjialilo, Christopher Syrjala was operating Aliloo Oriental Rugs.  Syrjala testified that Warner told him "the bank wouldn't cash the check because of insufficient funds."  Syrjala stated that he went to the bank and was informed that the account contained only $218.  Syrjala stated that he "told . . .[Warner] there was $218 in the account, that I would write a check for $200, which was most of . . . [Warner's] salary, and that Paul [Hadjialilo] would fix it up when he got back, you know, the underpayment."  Syrjala testified that he wrote the check for $200 and Warner immediately went to Southern Financial Bank and cashed it.  Syrjala stated that he did not ask Warner to return the $231 check because "it seemed totally unnecessary. . . . I mean, it was obvious that it was a bad check at that point."  Syrjala stated that he had initially mentioned that Warner might try cashing the $231 check at a country store, but testified, "then I thought better of it and came up with the idea of writing the second check that was within the amount of that in the account."

- 2 -

On Saturday, August 16, 1997, Warner was supposed to work, but Warner's girlfriend called to tell Syrjala that Warner was unable to come into work because a family member was ill. After cashing both checks, Warner never went back to work for Aliloo Oriental Rugs.

Syrjala testified that he received a call from Eagle Check Cashing in Manassas, Virginia. In response to the call, Syrjala stated that he "told them that a bank had refused to cash the check. . . ." Syrjala identified the check at trial as "[t]he one for $231 because of insufficient funds. . . ."

Hadjialilo testified that he received a call from a check cashing company in Manassas and he told them "the check is not good, not to cash the check." Hadjialilo stated that he called Southern Financial Bank and issued a stop payment on the $231 check.

Warner testified that he believed that the $231 check was, in part, pre-payment for the following weekend and week's wages. Warner stated that he did not work because his father had a heart attack. Warner stated that the bank had not informed him that the account contained insufficient funds and that when he cashed the $231 check, he did not know that there were insufficient funds.

## II. SUFFICIENCY OF THE EVIDENCE

Where the sufficiency of the evidence is an issue on appeal, an appellate court must view the evidence and all

- 3 -

reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth.  See Cheng v. Commonwealth, 240 Va. 26, 42, 393 S.E.2d 599, 608 (1990).  "Intent is the purpose formed in a person's mind that may, and often must, be inferred from the facts and circumstances in a particular case, and may be shown by a person's conduct."  Hernandez v. Commonwealth, 15 Va. App. 626, 632, 426 S.E.2d 137, 140 (1993) (citations omitted).  The "[i]ntent to defraud means that the defendant intends to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property."  Sylvestre v. Commonwealth, 10 Va. App. 253, 258-59, 391 S.E.2d 336, 339 (1990) (citations omitted).

On appeal, Warner acknowledges that he cashed the $231 check but argues that the evidence was insufficient to prove he had the intent to defraud or knowledge that the account contained insufficient funds when the check was uttered.  Warner also contends that he had a bona fide claim of right to the $231 check, which negated the criminal intent required for his conviction, and that the evidence was insufficient to prove that the Aldie Country Store is a depository as required by the indictment.

## A. Claim of Right

At trial, Warner stated that Syrjala gave him the $231 check, in part, as prospective payment for the following week. Warner testified that he intended to work the next week, prior to his father's heart attack, and that the money would then be "owed" to him. On appeal, Warner asserts that he believed he was entitled to the money, in part, as a prospective wage at the time he uttered the check, and in part because he was still owed thirty-one dollars from the previous week. Consequently, he maintains he lacked the requisite intent to defraud the Aldie Country Store.

Warner cites Butts v. Commonwealth, 145 Va. 800, 133 S.E. 764 (1926), for the proposition that a person cannot commit a larceny of his or her own property or of property that a person in good faith believes is his or her own. In Butts, the defendant was fired from his job without being paid his final wages. Butts returned to his former place of employment with a pistol and demanded payment from his supervisor at gunpoint. The Court reversed Butts' robbery conviction, holding that Butts' claim of right to the wages negated the requisite criminal intent for the conviction. See id. at 813-15, 133 S.E. at 768-69. Butts is distinguishable from the case before us because Warner had been paid $200 for the hours he worked. He was owed only thirty-one dollars. He did not earn an additional $200, either at the time the check was uttered or the following

- 5 -

week.  The evidence established that Warner was routinely paid

retroactively, not prospectively.

Additionally, a claim of right defense only applies against

a party that holds that person's funds.  A party may not assert

a "claim of right" against an innocent third party.  Here, the

victim of the uttering was the Aldie Country Store, not Warner's

employer.

### B.  "Depository" Language in the Indictment

On appeal, Warner argues that the evidence was insufficient

to prove that he defrauded a "bank or other depository" as

charged in the indictment.  Code § 18.2-181 states in relevant

part:

> Any person who, with intent to defraud,
> shall make or draw or utter or deliver any
> check, draft, or order for the payment of
> money, upon any bank, banking institution,
> trust company, or other depository, knowing,
> at the time of such making, drawing,
> uttering or delivering, that the maker or
> drawer has not sufficient funds in . . .
> shall be guilty of larceny. . . .

Warner argues that the Aldie Country Store is not a

depository as defined by Code § 18.2-181.  Warner, however,

misconstrues the use of the term "depository" in the statute.  A

"depository bank" refers to "the first bank to which an item is

transferred for collection even though it is also the payor

bank."  Code § 8.4-105(a).  A "payor bank" is defined as "a bank

by which an item is payable as drawn or accepted."  Code

§ 8.4-105(b).  Therefore, a depository as defined by the

legislature is the institution upon whose funds the check is drawn.  Here, the depository referred to in the indictment is Southern Financial Bank, not the Aldie Country Store.

To construe the statute as Warner suggests would criminalize the passing of bad checks only when they are passed directly at the depository bank.  We hold that the "depository" language in Code § 18.2-181 refers to the institution upon which the funds are drawn, not to the entity where the check is uttered.

### III.  HEARSAY EVIDENCE

On appeal, Warner argues that the trial court erred in admitting evidence in violation of the hearsay rule.  We agree, but we find that the admission of the statements was harmless error.

Hearsay is "testimony which consists [of] a narration by one person of matters told him by another."  Williams v. Morris, 200 Va. 413,417, 105 S.E.2d 829, 832 (1958).  "The strongest justification for the exclusion of hearsay evidence is that the trier of fact has no opportunity to view the witness on cross-examination and to observe the demeanor of the out-of-court declarant to determine reliability."  Evans-Smith v. Commonwealth, 5 Va. App. 188, 197, 361 S.E.2d 436, 441 (1987), citing C. Friend, The Law of Evidence in Virginia § 224 (2d ed. 1983).  However, "[i]f the declaration is offered solely to show that it was uttered, without regard to the truth or

falsity of its content, the declaration is not excluded by the hearsay rule." Evans-Smith, 5 Va. App. at 197, 361 S.E.2d at 441 (citations omitted) (emphasis omitted).

Warner objected to the admission of the following testimony from Syrjala:

> Q: Do you recall when you actually opened the office whether or not you received a phone call from Eagle Check Cashing Company?
>
> A: Yes.
>
> DEFENSE COUNSEL: Objection, hearsay.
>
> THE COURT: State the grounds of your objection.
>
> DEFENSE COUNSEL: Hearsay.
>
> THE COURT: Whether or not a call was received is not hearsay. She did not ask what the content of the conversation was. Overruled.
>
> DEFENSE COUNSEL: May I –
>
> THE COURT: Overruled. Go ahead.
>
> COMMONWEALTH: Thank you, Your Honor.
>
> Q: Do you recall what day it was in the sequence of events that you got this call?
>
> A: Saturday morning just after I opened the store, about 15 minutes afterwards, I got a call from Eagle Check Cashing in Manassas asking me to verify –
>
> Q: -- just answer the question that I asked you. Now, as a result of Eagle Check Cashing, what if any response did you make back to those people during your telephone conversation with them?

A:  Well, can I say what they asked?

THE COURT:  No.  That's hearsay.  The objection made by [defense counsel] is sustained.  Actually, the Commonwealth backed off.  You may not because it's hearsay, sir.

A:  I told them that a bank had refused to cash the check yesterday.

Q:  What check?

A:  The one for $231 because of insufficient funds I gave them as the reason.

Warner also objected to the following testimony from Hadjialilo:

Q:  Now, regarding the exhibit that I showed you, the check in the amount of $231, did you have a conversation with him about the check?

A:  I saw Mr. Warner after I had a call from a check cashing company in Manassas.

DEFENSE COUNSEL:  Your Honor, I would object as to hearsay.

THE COURT:  If he had the call, it is a fact.  There's been no question and no statement regarding any hearsay.  Overruled at this stage.

Q:  After receiving that phone call from the check-cashing place in Manassas, what did you do with regard to . . . Warner?

A:  They told me there's a - -

THE COURT:  Don't tell what they told you.  The question is what did you do.

WITNESS:  What I told - -  can I tell them what I told them?

THE COURT:  Answer the question.

> Q: What did you tell the bank institution
> that called you?
>
> A: I told them that the check is not good,
> not to cash that check. He already got paid
> for the work that he worked and I tried to
> get in touch with Mr. Warner. And,
> actually, I saw him again in the street, and
> I was kind of disappointed I told him. I
> showed him my disappointment [sic] and got a
> call the next day from John Beiler at the
> country store.

Warner argues that in both instances the court erred in allowing Syrjala and Hadjialilo to testify that the phone calls were received from check cashing companies. We agree. Testimony that phone calls were received is not hearsay. Testimony that a phone call came from a person unknown to the recipient and who is identified only by the caller is hearsay if offered to establish the identity of the caller. The only way Syrjala and Hadjialilo could know who was calling was from an out-of-court declaration from the caller. The relevancy of Syrjala's and Hadjialilo's responses to the call is dependent upon who made the call. Clearly, this information lacks any significance unless the source of the call is known. Similarly, it is clear that the identification of the caller in each instance was based solely upon out-of-court declarations and was offered for the truth of the matters stated.

"Error will be presumed prejudicial unless it plainly appears that it could not have affected the result." Joyner v. Commonwealth, 192 Va. 471, 477, 65 S.E.2d 555, 558 (1951).

- 10 -

Therefore, "[a] criminal conviction shall not be reversed for an error committed at trial when it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Hanson v. Commonwealth, 14 Va. App. 173, 189, 416 S.E.2d 14, 23 (1992) (citations omitted); see Code § 8.01-678.

> A nonconstitutional error is harmless if "it plainly appears from the record and the evidence given at trial that the error did not affect the verdict." "An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that had the error not occurred, the verdict would have been the same."

Scott v. Commonwealth, 18 Va. App. 692, 695, 446 S.E.2d 619, 620 (1994) (quoting Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc)).

Excluding the hearsay evidence that Syrjala and Hadjialilo both received phone calls from a check cashing company in Manassas, the Commonwealth presented overwhelming evidence to prove that Warner cashed the $231 check with the intent to defraud and with knowledge that the funds in the account were insufficient. Syrjala testified that Warner told him that the bank refused to cash the $231 check because the funds in the account were insufficient. Syrjala wrote a second check to Warner in the amount of $200, which the funds in the account were sufficient to cover, and told him that Hadjilalilo would pay him an additional thirty-one dollars when he returned to the

- 11 -

country.  Warner cashed the check for $200.  Two days later, he presented the $231 check to the Aldie Country Store.  Syrjala testified that he did not ask Warner to return the $231 check because Warner knew that the check was "bad."  Warner never returned to work at Aliloo Oriental Rug Corporation.

## IV.  CONCLUSION

The evidence is sufficient to prove beyond a reasonable doubt that Warner knew the account contained insufficient funds to cover the $231 check when he presented it to the Aldie Country Store.  He is not entitled to a claim of right defense because he was not entitled to the sum of $231 and the right may not be asserted against an innocent victim who does not hold the funds claimed.  Finally, we hold that the trial court erred in admitting hearsay statements concerning two phone calls; however, upon review of the record we conclude that the error did not affect the verdict.  Accordingly, the conviction is affirmed.

                                                    Affirmed.