PRESENT:  All the Justices

OLMEDO ALBERTO PENA PINEDO

                                      OPINION BY
v.  Record No. 200748                         JUSTICE TERESA M. CHAFIN
                                        JULY 8, 2021

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Olmedo Alberto Pena Pinedo ("Pena Pinedo") contends that the Court of Appeals of Virginia erred in "upholding the trial court's erroneous refusal to instruct the jury with the model instruction regarding a claim-of-right defense."  Upon review, we affirm the judgment of the Court of Appeals.

I.  BACKGROUND

"When reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction."  *Commonwealth v. Vaughn*, 263 Va. 31, 33 (2002).  Viewed in the light most favorable to Pena Pinedo, the facts of this case are as follows.

In 2017, Pena Pinedo went "into business" with his cousin, Luis Lafferty.  Pena Pinedo and Lafferty sold drugs and occasionally traded firearms.  T.B., a seventeen-year-old girl who was having a sexual relationship with Lafferty, stole $5,600 from Lafferty around October 12, 2017.  Pena Pinedo and Lafferty earned this money by "selling drugs," and part of the money belonged to Pena Pinedo.

Although Pena Pinedo and Lafferty searched for T.B. shortly after she stole the money, they could not find her anywhere in the nearby neighborhood.  Therefore, Pena Pinedo and Lafferty inferred that T.B. had been picked up by someone in a vehicle.

Through the "word on the street," Pena Pinedo and Lafferty heard that Kamau Imani, T.B.'s boyfriend, was involved in the theft. Lafferty testified that he believed that Imani "set up" T.B. to steal from him. Lafferty "assumed" that T.B. gave the stolen money to Imani, and that T.B. and Imani used the stolen money to "buy and sell drugs together."

Lafferty testified that Pena Pinedo was "pretty upset" about the theft. He told Lafferty, "I'm not going to let somebody come into my house and disrespect me like that, somebody's going to pay for this." Pena Pinedo also sent a threatening message to T.B. shortly after the theft occurred.

On the evening of October 19, 2017, Pena Pinedo arranged for a friend to set up a marijuana deal with T.B. Pena Pinedo then told Lafferty that they needed to "go handle some business" and "get [their] money back." Even though Pena Pinedo's friend set up the marijuana deal with T.B., Lafferty believed that Imani would also be present at the deal.

Pena Pinedo, Lafferty, and two other men drove to the parking lot of the apartment building where they had arranged to meet T.B. In the meantime, a friend drove T.B. and Imani to the parking lot. Imani sat in the front passenger seat of the friend's car, and T.B. sat behind Imani in the backseat of the friend's car. When Pena Pinedo and Lafferty arrived at the parking lot, they approached the car in which T.B. and Imani were passengers. Pena Pinedo and Lafferty pointed firearms at Imani and the driver of the car and shouted, "Where's my money at?"

Pena Pinedo took a "wad" of money from Imani.[*] He then shot Imani through the neck and fled from the scene of the shooting. Imani died from his injuries approximately seven months later, on May 10, 2018.

---

[*] The record suggests that Pena Pinedo also took marijuana from Imani. Lafferty testified that he and Pena Pinedo intended to take money, marijuana, and "whatever else" that T.B. had with her on the evening of October 19, 2017. T.B. and the driver of the car both testified that

2

United States Marshals eventually apprehended Pena Pinedo in Beckley, West Virginia. Pena Pinedo was charged with first degree felony murder, robbery, conspiracy to commit robbery, and the use of a firearm in the commission of a felony. A three-day jury trial was subsequently held in the Circuit Court of Rockingham County.

At trial, Pena Pinedo argued that he could not be convicted of robbery, or the other offenses that relied on the robbery charge, because he lacked the requisite criminal intent. Asserting a claim-of-right defense, Pena Pinedo maintained that he did not intend to steal any property that belonged to Imani. Pena Pinedo argued that when he confronted Imani on October 19, 2017, he was only trying to recover the money that T.B. stole from Lafferty.

Pena Pinedo requested that the circuit court give the model jury instruction regarding the claim-of-right defense, Virginia Model Jury Instructions – Criminal No. 52.200. Specifically, Pena Pinedo requested that the circuit court give the following instruction to the jury: "If you believe the defendant took the property he is charged with stealing under a belief that he had a good faith claim of right to take it, then, even though his belief was mistaken, you shall find the defendant not guilty of robbery."

The circuit court concluded that there was not more than a scintilla of evidence to support the requested instruction. Applying *Butts v. Commonwealth*, 145 Va. 800 (1926), the circuit court explained that:

---

Pena Pinedo told Imani to "give us everything" or "give [us] whatever you got." One of Pena Pinedo's accomplices also testified that Pena Pinedo demanded "weed" and "money" from Imani. T.B. and Lafferty testified that Pena Pinedo actually took marijuana from Imani. Additionally, Pena Pinedo told his cellmate that he took marijuana from Imani.

Nonetheless, the record contains conflicting evidence regarding the theft of the marijuana. The police found a bag of marijuana in Imani's friend's car after the shooting. Construing this evidence in the light most favorable to Pena Pinedo, we will assume that Pena Pinedo only took money from Imani.

> [M]ore than a mere belief is required to get this instruction. There has to be more than a scintilla of evidence [that] this belief . . . is in good faith and there is not more than a scintilla of evidence to support the belief being in good faith as indicated by the Commonwealth.

The circuit court questioned whether an individual could have a good faith claim of right to recover stolen contraband. Ultimately, however, the circuit court concluded that the evidence failed to establish that Imani received any of the money that T.B. stole from Lafferty. Thus, the circuit court refused to give the requested jury instruction.

At the conclusion of Pena Pinedo's trial, the jury convicted him of the charged offenses. Pena Pinedo timely noted an appeal. The Court of Appeals granted Pena Pinedo an appeal as to his assignment of error challenging the circuit court's refusal to instruct the jury "with the model instruction regarding a claim-of-right defense."

The Court of Appeals affirmed the circuit court's decision. *See Pena Pinedo v. Commonwealth*, 72 Va. App. 74, 85-86 (2020). Like the circuit court, the Court of Appeals concluded that there was "not more than a scintilla of evidence" to establish Pena Pinedo's "good faith claim of right" to recover the stolen money. *See id.*

As a preliminary matter, the Court of Appeals observed that the record contained "more than a scintilla of evidence" to establish that Pena Pinedo had a "subjective belief" that he was entitled to reclaim the money stolen by T.B. when he confronted Imani on October 19, 2017. *See id.* at 83-84. Nevertheless, the Court of Appeals also observed that the record clearly established that the money stolen by T.B. was "drug money," or money earned through Pena Pinedo's and Lafferty's "joint illegal drug distribution operation." *See id.* at 84. The Court of Appeals held that "as a matter of law . . . , one cannot have a *good faith* belief that one has a legal right to recover contraband or the fruits of a crime." *Id.* at 85 (emphasis in original).

4

For these reasons, the Court of Appeals determined that the circuit court did not err when it refused to instruct the jury regarding the claim-of-right defense. *See id.* at 85-86.

This appeal followed.

## II. ANALYSIS

Pena Pinedo contends that the model claim-of-right jury instruction was supported by more than a scintilla of evidence in this case. We disagree.

As a general rule, the matter of granting and refusing jury instructions rests "in the sound discretion of the trial court." *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009). "Our sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Id.* (quoting *Molina v. Commonwealth*, 272 Va. 666, 671 (2006)).

A jury instruction is proper only when it is supported by "more than a scintilla of evidence." *Commonwealth v. Sands*, 262 Va. 724, 729 (2001). "If the instruction is not applicable to the facts and circumstances of the case, it should not be given." *Id.* "Thus, it is not error to refuse an instruction when there is no evidence to support it." *Id.*

Robbery is "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." *Butts*, 145 Va. at 811. Accordingly, the intent to steal is an essential element of robbery in Virginia. *See Pierce v. Commonwealth*, 205 Va. 528, 532 (1964).

Virginia has recognized the claim-of-right defense to robbery since at least 1926. *See Butts*, 145 Va. at 811-13. In the context of robbery, a good faith or bona fide claim of right negates the mens rea element of the offense. "To take property under a bona fide claim of right, as under a claim of ownership, or in a bona fide attempt to enforce payment of a debt, is not

5

robbery though the taking be accompanied by violence or putting in fear." *Pierce*, 205 Va. at 533. "[T]here can be no larceny of the property taken if it, in fact, is the property of the taker, or if he, in good faith, believes it is his, for there is lacking the criminal intent which is an essential element of larceny." *Butts*, 145 Va. at 811-12.

The claim-of-right defense requires a predicate showing of "good faith," or a bona fide belief by the taking party that he has some legal right to the property taken. *See id.* "[I]f the claim of right is a mere pretext covering the intent to steal, the taking by violence is robbery." *Pierce*, 205 Va. at 533. A claim-of-right defense may be based on a good faith, yet mistaken, claim to property. *See* 7 Ronald J. Bacigal & Corinna Barrett Lain, Virginia Practice Series: Criminal Offenses and Defenses 391 (2020-21 ed.). Any claim of right underlying the defense, however, must be sincere and not merely a dishonest pretense. *See id.* "Usually the question of bona fides is one for the jury, but where . . . the facts are undisputed, and only one conclusion could be fairly drawn therefrom by reasonable men, it is a question of law for the court." *Butts*, 145 Va. at 814.

In the present case, Pena Pinedo's claim-of-right defense was based on his claim to the money that T.B. stole from Lafferty. As noted by the Court of Appeals, the evidence presented in this case plainly established that the stolen money was "drug money." *See Pena Pinedo*, 72 Va. App. at 84. Both Lafferty and T.B. candidly testified that the stolen money was earned through illegal drug transactions, and their testimony regarding the source of the stolen money was uncontradicted.

The record does not contain more than a scintilla of evidence to establish that Pena Pinedo had a good faith or bona fide claim of right to the stolen money. While Pena Pinedo may have subjectively believed that T.B. and Imani stole the money from Lafferty, Pena Pinedo was

never legally entitled to possess the money at issue. As Pena Pinedo and Lafferty earned the money by "selling drugs," the stolen money was itself a form of derivative contraband. Therefore, Pena Pinedo could not have possessed the money in good faith.

We hold that the claim-of-right defense does not apply under these circumstances. The Court of Appeals correctly determined that an individual cannot have a good faith or bona fide claim of right regarding contraband, money earned from the sale of contraband, or other "fruits of a crime." *See Pena Pinedo*, 72 Va. App. at 84-85. To hold otherwise would permit criminals to benefit from their illegal activities. *See, e.g.*, *Zysk v. Zysk*, 239 Va. 32, 34 (1990) ("[C]ourts will not assist the participant in an illegal act who seeks to profit from the act's commission."), *rev'd on other grounds by Martin v. Ziherl*, 269 Va. 35, 43 (2005).

## III. CONCLUSION

For the reasons stated, we affirm the judgment of the Court of Appeals.

*Affirmed.*