UNITED STATES of America, Appellee,

v.

**William M. DICKERSON, Appellant.**

**No. 80–5210.**

United States Court of Appeals,
Fourth Circuit.

Argued April 8, 1981.

Decided July 30, 1981.

William B. Moffitt, Alexandria, Va. (J. Flowers Mark, Barry Wolf, Mark & Moffitt, Alexandria, Va., on brief), for appellant.

N. George Metcalf, Asst. U. S. Atty., Richmond, Va. (Justin W. Williams, U. S. Atty., Richmond, Va., on brief), for appellee.

Before WINTER, Chief Judge, HAYNSWORTH, Senior Circuit Judge, and HALL, Circuit Judge.

WINTER, Chief Judge:

William McKinley Dickerson appeals from the judgment entered on his conviction of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Dickerson was tried non-jury and convicted upon a stipulation of facts and sentenced to six months imprisonment. On appeal he contends that the district court erred in denying his pretrial motion to suppress certain evidence which the government obtained through the allegedly unlawful placement of a tracking device in an airplane flown by the defendant. We affirm.

Before addressing the substance of Dickerson's motion to suppress, the district court conducted an evidentiary hearing addressed only to the issue of Dickerson's standing to object to the search of the plane. At that hearing Dickerson introduced the testimony of one witness and the affidavits of two law enforcement officers.

The first affidavit, executed by Texas state policeman Ralph Mutchler, who had observed the plane at Hardin County, Texas, stated that the plane was "in charge of

and controlled by" an individual later identified as Dickerson. The affidavit noted that the rear windows of the plane were covered and that a small piece of tape had been placed across the plane door to indicate whether the door had been opened. When called as a witness, Mutchler added that Dickerson was the only person he had seen around the plane at the Texas airport. He testified that Dickerson entered the locked door of the plane by using a key.

The second affidavit, from customs agent Charles James, stated that the plane had been tracked by means of the implanted transmitter from Texas to Mexico, and then to Clarksville Airport in Virginia, where Dickerson was observed leaving the plane. The government then introduced a certificate of ownership indicating the plane was owned by Fantail, Inc. Dickerson offered no evidence in rebuttal.

■ Applying the standard set forth in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the district court concluded that Dickerson had failed to carry the burden of proving a "legitimate expectation of privacy" in the aircraft that would entitle him to raise a Fourth Amendment objection to its search. Unquestionably the district court was correct in placing that burden of proof upon the defendant, since "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." 439 U.S. at 130 n.1, 99 S.Ct. at 424 n.1.

■ Dickerson argues, however, that the evidence of his dominion and control over the aircraft and his ability to exclude others should suffice to establish a legitimate expectation of privacy. The district court's holding, he asserts, rests on a property-interest analysis that was discarded in favor of a privacy-interest analysis as early as *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). We disagree. Clearly, *Rakas* did not hold that only an owner of property may raise a Fourth Amendment objection to its search. Nevertheless, in granting constitutional protection only to *legitimate* expectations of privacy, the Court necessarily incorporated into its analysis some notions of lawful use or possession of property. *See* 439 U.S. at 143 n.12, 99 S.Ct. at 430 n.12. Indeed, Dickerson concedes, as he must under *Rakas*, that one unlawfully in possession of an airplane has no right to object to its search.

■ In *United States v. Hargrove*, 647 F.2d 411 (4 Cir., 1981), we held that, in light of the defendant's burden of proving his standing to object to the search of an automobile, production by the government of evidence that the vehicle previously had been reported stolen sufficed to require the defendant to show that he acquired the car innocently. *Id.* at 413. Likewise, we believe the government's production in this case of a certificate showing that Fantail, Inc. owned the airplane required Dickerson to produce some evidence that he possessed an interest in Fantail, Inc. or that he flew the plane with permission of the owner. In the absence of such evidence, the district court could properly infer that Dickerson's possession of the plane was not "legitimate."

■ Dickerson finally contends that placing the burden of proving legitimate possession upon the defendant and then drawing inferences from his failure to testify creates an intolerable conflict between his Fourth Amendment rights and his Fifth Amendment protection against self-incrimination. In order to establish the legitimacy of his interest, Dickerson contends, he might have been forced to testify at the suppression hearing and reveal incriminating evidence. However, Dickerson never asserted in the district court that evidence necessary to establish his legitimate expectation of privacy in the airplane could be produced only through his own testimony which would incriminate him. He stated simply that a "choice was made" to prove standing through other evidence. Thus the record contains no factual support for Dickerson's Fifth Amendment claim. Moreover, as a matter of law, *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), eliminates the dilemma to which Dickerson objects. *Simmons* held:

[W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.

390 U.S. at 394, 88 S.Ct. at 976.

AFFIRMED.