**Alexandria**
WILLIAM EDWARD MOTEN
v.
COMMONWEALTH OF VIRGINIA
No. 0339-87-4
Decided December 6, 1988

COUNSEL

N. Randolph Bryant, John R. Prosser (Prosser, Parthemos & Bryant, on brief) for appellant.

Jim L. Chin, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief) for appellee.

OPINION

DUFF, J.—William Edward Moten appeals his conviction of second degree murder for which he was sentenced, in accordance with the jury's recommendation, to ten years in the penitentiary. He contends that he was denied his rights to a speedy trial under Code § 19.2-243 as well as under the sixth amendment to the United States Constitution and article I, section 8 of the Virginia Constitution. We disagree with these contentions and affirm Moten's conviction.

I.

THE FACTS

The accused was arrested on November 19, 1985 on a direct indictment by the grand jury. The subsequent chronology of events is crucial to our inquiry. After his arrest, the defendant

informed the court he was indigent and counsel was appointed. On January 2, 1986, a "Motion for Psychiatric Evaluation and Observation" was filed in the clerk's office by defense counsel. An evidentiary hearing and argument on the motion was held January 6, 1986, at which time the court found probable cause and orally ordered that the defendant's sanity at the time of the offense be evaluated by a psychiatrist or psychologist with a doctoral degree in clinical psychology. The written order exemplifying this holding was entered February 4, 1986.

Moten was then evaluated in jail on two occasions by David Wimberly, Ph.D., of Northwest Community Services. In a report written on February 12, 1986, Dr. Wimberly stated that he had been requested by the court to evaluate both the defendant's mental state at the time of the offense and his competency to stand trial. Pertinent to our inquiry, the report contained *inter alia*, the following observations:

> Mr. Moten was quite unwilling to talk with me. . . . Mr. Moten was seen twice and on neither occasion was he willing to participate adequately in the interview. . . . I do not feel that I am in a position to make much of a statement about his mental state at the time of the offense. I have written a letter to the defense attorneys in this regard, and they may wish to pursue this matter further. . . . I was not able to proceed with the standard interview. . . . The only significant issues were his unwillingness to participate in the forensic evaluation and his distrust of his attorneys.

Dr. Wimberly also reported that it might be advisable to consider a further evaluation of Moten in an inpatient setting. The report was not stamped as received by the clerk's office until February 20, 1986.

On March 26, 1986, defense counsel moved the court to send Moten to Central State Hospital "for the purpose of conducting further examination and evaluation" of his competency to stand trial and competency at the time of the offense. Counsel supported the motion by attaching a copy of a letter from Dr. Wimberly to him dated February 12, 1986, wherein such suggestion was made. A hearing on this motion was held April 8, 1986, the first day the court sat after filing. The motion was orally granted. A written order was entered on April 18, 1986 referring Moten to Central

State Hospital. For reasons not entirely clear in the record, a supplemental order containing more specific directions regarding the terms of his admission was entered on May 15, 1986. The accused was then admitted and evaluated by James C. Dimitris, M.D., and William M. Lee, Ph.D. Their joint report was filed with the court June 25, 1986, finding Moten both competent to stand trial and sane at the time of the offense.

On July 1, 1986, an order was entered for Moten's return from Central State Hospital to the Frederick County jail. He was arraigned July 14, 1986, and scheduled for trial on August 25, 1986. On August 22, 1986, a motion to dismiss the prosecution for violation of Moten's speedy trial rights was filed. The motion was argued on August 25, 1986, and was denied, with the trial commencing immediately thereafter. The defendant remained in custody continuously from the time of his arrest until his trial, a total of 279 days.

## II.
## THE STATUTORY CLAIM

■■■ Code 19.2-243(1)[1] provides that ". . . the accused, if he is held continuously in custody shall be forever discharged from prosecution for such offense if there be no trial commenced in the circuit court within five months from the date such probable cause was found by the district court. . . ." In this case, both indictment and arrest occurred on November 19, 1985. The five month period is computed as 152 and a fraction days. In Virginia an affirmative duty rests on the Commonwealth to bring about a speedy trial, and an accused may stand mute without waiving his rights so long as his actions do not constitute a concurrency in or necessitate a delay of the trial. *Godfrey v. Commonwealth*, 227

---

[1]  Where a general district court has found that there is probable cause to believe that the accused has committed a felony, the accused, if he is held continuously in custody thereafter, shall be forever discharged from prosecution for such offense if there be no trial commenced in the circuit court within five months from the date such probable cause was found by the district court; and if the accused is not held in custody but has been recognized for this appearance in the circuit court to answer for such offense, he shall be forever discharged from prosecution therefor if there be no trial commenced in the circuit court within nine months from the date such probable cause was found.

The provisions of this section shall not apply to such period of time as the failure to try the accused was caused:

(1) By his insanity or by reason of his confinement in a hospital for care and observation. . . .

Va. 460, 463, 317 S.E.2d 781, 783 (1984); *Walker v. Commonwealth*, 225 Va. 5, 9, 301 S.E.2d 28, 30 (1983). Further, when a defendant asserts that he has been denied a speedy trial the burden is on the Commonwealth to satisfactorily explain the delay. *Godfrey*, 227 Va. at 463, 317 S.E.2d at 782. Finally, the statute sets forth five circumstances or exceptions that excuse the failure to bring an accused to trial within the prescribed time limits. Code § 19.2-243(1) excuses failure to try an accused who is insane or confined in a hospital for care and observation. These five circumstances are not all inclusive; others of a similar nature are implied. *Stephens v. Commonwealth*, 225 Va. 224, 230, 301 S.E.2d 22, 25 (1983); *Cantwell v. Commonwealth*, 2 Va. App. 606, 610, 347 S.E.2d 523, 525 (1986). The exceptions, both express and implied, often look to the defendant's actions that tend to delay the trial. *Cantwell*, 2 Va. App. at 610, 347 S.E.2d at 525; Stephens, 225 Va. at 231-32, 301 S.E.2d at 25-26; *Butts v. Commonwealth*, 145 Va. 800, 807, 133 S.E. 764, 766 (1926).

In *Stephens* our Supreme Court held that, although the defendant did not move for a continuance, he was responsible for the delay because he filed a motion to suppress, thus becoming "the moving party in the proceeding, which necessitated the continuance." 225 Va. at 233-34, 301 S.E.2d at 27. The court further stated:

> When the defendant filed his motion to suppress he was not asking for a speedy trial. It was an act which necessitated a slow-down of the judicial process. What the defendant desired was favorable action on this motion and dismissal of the prosecution. At that stage, defendant did not seek a trial on the merits of his case but rather a final disposition of the case on his pretrial motion. Obviously he was pinning all his hopes on the strength of his arguments, oral and written, made to the trial judge in support of his motion to suppress, and he did not want precipitate action. He wanted careful consideration by the Court.

*Id.* at 233, 301 S.E.2d at 27.

In *Cantwell*, we refused to allow a defendant to take advantage of the delay necessitated by his filing of six motions with over thirty pages of supporting memoranda just two weeks before trial.

He was held responsible for the delay occasioned by the need for the court to consider the motions. Therefore, Cantwell's prosecution was not barred by Code § 19.2-243.

To explain the delay of the trial from the statutory limit of 152 days to 279 days, the Commonwealth contends that the time between the filing of the defendant's first motion for a psychological evaluation on January 2, 1986 until the second psychological report was received by the court on June 25, 1986 (174 days), should properly be attributable to the defendant. Excluding such time from the total delay of 279 days leaves 105 days chargeable to the Commonwealth, well within the 152 days allowed by statute.

The defendant contends that various portions of the 174 days from January 2, 1986 to June 25, 1986 should not be chargeable against him. He argues that, while his first motion for evaluation was orally granted on January 2, 1986, the written order was not entered by the court until February 4, 1986, thirty-three days later. Upon the first evaluation being received by the court on February 20, 1986, the Commonwealth took no action to expedite the matter on the docket and an additional thirty-four days elapsed before defense counsel filed his second motion for an evaluation; the second motion was argued and granted on April 8, 1986, but it took two orders to effect Moten's transfer to the hospital (the second being entered May 15, 1986, thirty-seven days after April 8, 1986).

The Commonwealth contended at trial and on appeal that the delay in the entry of orders was not unreasonable, considering that there was no resident circuit judge in Clarke County. It argues further that the defendant was free to draft and submit orders but did not do so. In any event, the Commonwealth asserts that the drafting and entering of the orders in question were the direct result of the defendant's motion for a psychological evaluation.

As we view the record, it is clear that the sole reason Dr. Wimberly could not reach a conclusion about Moten's sanity at the time of the offense was Moten's failure to cooperate. The doctor suggested in-patient evaluation at Central State Hospital in the hope that the accused might get to know and feel more comfortable with the examiners. Thus, upon receipt of Dr. Wimberly's report, the issue of Moten's sanity was unresolved. The court, hav-

ing previously found probable cause to believe that mental disease may have affected Moten's actions at the time of the offense, could not proceed with trial until this issue had been finally determined.

The motion in the first instance was brought by the defendant. It was for his benefit. It was his actions and lack of cooperation with Dr. Wimberly that prevented a final determination by Dr. Wimberly. We hold that under these circumstances, the burden was on the defendant to expedite the second evaluation. This was not done until defense counsel filed a motion for further evaluation on March 26, 1986, some thirty-four days after the filing of Dr. Wimberly's report. A hearing on the motion was held on the first day the court sat after it was filed, *viz*, April 8, 1986. It was granted on that date, and a written order was entered ten days later on April 18, 1986. A second order was entered on May 15, 1986, as the initial order was not sufficiently specific to effect Moten's transfer. The record is devoid of any explanation regarding the entry of these two orders, and we will not assume or speculate that the time involved for entry or any deficiency in the first order is properly chargeable against the Commonwealth. When viewed in light of the fact that the need for the second evaluation and the consequent transfer order was the defendant's frustration of the initial evaluation, we find that this delay was properly chargeable to the defendant.

The record, likewise, is void of any explanation for the thirty-three day delay from the oral ruling granting the psychological evaluation on January 2, 1986, and the entry of the written order on February 4, 1986. However, even if these thirty-three days are chargeable against the Commonwealth, the total chargeable delay was 138 days, well below the statutory limit of 152 days.

For these reasons, we find no reversible error in the court's action in denying the motion to dismiss based on an alleged violation of Code § 19.2-243.

## III.

### THE CONSTITUTIONAL CLAIM

Moten also contends that he was denied his constitutional rights to a speedy trial under the Sixth Amendment, United

States Constitution and Article I, Section 8 of the Virginia Constitution. The United States Supreme Court has not adopted a precise formula for determining when the constitutional right to a speedy trial has been abridged. In *Barker v. Wingo*, 407 U.S. 514 (1972), the court identified four factors to be assessed by courts in determining whether a particular defendant has been deprived of his speedy trial right: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice caused the defendant. These factors must be scrutinized together with all other relative circumstances of the particular case. *Id.* at 530.

The Commonwealth argues that the delay of 279 days is insufficient to require further inquiry of the other factors in order to determine if constitutional rights have been abridged, citing *United States v. Ewell*, 383 U.S. 116 (1966) (nineteen month delay, no violation of speedy trial rights), and *United States v. Shillman*, 442 F.2d 542 (8th Cir.), *cert. denied*, 404 U.S. 833 (1971) (twenty month delay not undue). However, we are not prepared to hold that a delay of 279 days, regardless of the circumstances, raises no constitutional claim. We will, therefore, proceed to the other factors outlined by the Supreme Court.

In viewing the cause of the delay, the defendant's request for a psychological evaluation temporarily tolled the running of any time chargeable against the Commonwealth. The first evaluation was of little value because of the defendant's refusal to cooperate with the doctor. Thus, a second evaluation was necessary. While reasonable minds may differ as to whether portions of the delay should be chargeable against the Commonwealth because of administrative difficulties in securing the entry of orders, the primary and overriding cause was the attitude and lack of cooperation of the defendant with Dr. Wimberly, which prevented the latter from resolving the sanity issue in February, 1986. There is nothing in the record to indicate any effort by the Commonwealth to delay prosecution. *See Holliday v. Commonwealth*, 3 Va. App. 612, 618, 352 S.E.2d 362, 365 (1987).

Moten asserted his right to a speedy trial by filing his motion three days before trial. Prior thereto, his interest and intent was to delay the trial while his mental condition was evaluated in the understandable hope that the report would support an insanity defense. This delay is attributable to the defendant and weighs

against his claim that his constitutional rights have been violated.

■ In determining prejudice, we have reviewed the record in the light of the three types of interests that the Court in *Barker* identified as being protected by the sixth amendment right to a speedy trial, *viz* (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. We are satisfied that none of these interests were adversely affected to such an extent as to create prejudice of constitutional dimensions.

For these reasons, the conviction is affirmed.

*Affirmed.*

Keenan, J., concurred.

Barrow, J., dissenting,

In my opinion, the majority's decision disregards the method chosen by the legislature to overcome unnecessary delay in criminal proceedings. While the General Assembly elected to eliminate delay by placing a disincentive on the Commonwealth attorney, the majority's decision removes this disincentive by shifting the burden to the criminal defendant who has little incentive for avoiding delay. Since the impact of this shift diminishes the effectiveness of the legislative scheme, I respectfully dissent.

While the goal of the "speedy trial" statute is obvious, its methodology is less apparent. The statute strives to expedite criminal proceedings by placing a disincentive on the Commonwealth attorney for the failure to do so. This disincentive is the dismissal of criminal charges, if not brought to trial within the requisite time.

Of the three major participants (judge, defendant and prosecutor) in the adverserial process, only the prosecutor can be effectively sanctioned to assure an expeditious trial. The judge, a neutral decision maker, although interested in avoiding unnecessary delay, has no greater interest in a dismissal than in an acquittal of criminal charges. A criminal defendant, while unequivocally interested in an acquittal, vacillates in his desire for a speedy trial. The adverse effect of delay on the defendant — his pretrial incarceration, his anxiety and the impairment of his defense — may be outweighed by the harm delay may cause the prosecution in prov-

ing its case. On the other hand, the prosecution's interest should be, steadfastly, to obtain a conviction without unnecessary delay. Thus, the General Assembly wisely chose to burden the prosecution with the responsibility of assuring a trial without unnecessary delay.

Even so, the General Assembly did not overlook the possibility of justifiable delay. First, the statute recognizes, through the time it does allow, that both the defendant and the prosecution need time to adequately prepare for trial. *See* Code § 19.2-243; *see Cantwell v. Commonwealth*, 2 Va. App. 606, 613, 347 S.E.2d 523, 525-27 (1986). Secondly, the statute expressly identifies five circumstances in which a delay excuses the failure to try an accused within the required time. Code § 19.2-243; *see Cantwell*, 2 Va. App. at 610, 347 S.E.2d at 525.

Additional exceptions have been judicially created. *Stephens v. Commonwealth*, 225 Va. 224, 231, 301 S.E.2d 22, 25-6 (1983). These exceptions, while not specifically provided for by statute, must be "in pari ratione" with the statutory exceptions, that is, they must have the same rationale as the statutory exceptions. *Id.* at 231, 301 S.E.2d at 26. The courts are not free to create exceptions merely because they may appear desirable but may do so only when the exception is consistent with the statutory rationale.

Judicially, only two such exceptions have been recognized. Where a federal court enjoined a "law officer of the state from proceeding with . . . [a defendant's] . . . trial, and . . . [prohibited] the use of certain books and records as evidence on behalf of the Commonwealth," the predecessor to Code § 19.2-243 was held not to apply. *Wadley v. Commonwealth*, 98 Va. 803, 805, 35 S.E. 452, 453 (1900). The time during which a trial judge takes under advisement a defendant's motion to suppress certain evidence also has been excepted from the statute's time limits. *Stephens*, 225 Va. at 233, 301 S.E.2d at 27.

The rationale, common to both the statutory and the judicially recognized exceptions, is that, where the Commonwealth attorney is powerless to cause the matter to proceed, the statutory provisions do not apply. This underlying rationale is logical. If the Commonwealth attorney has no control over the proceedings, the disincentive has no effect and delay should not result in a dismissal. On the other hand, if the Commonwealth attorney has such

control, even if it is shared with the defendant, the disincentive effectively encourages the Commonwealth to act to expedite the trial.

The underlying rationale of the statute is not, as the Commonwealth argues, whether the delay was reasonable. Unlike a constitutional claim to a speedy trial, a claim made under the provisions of Code § 19.2-243 involves no balancing or weighing of factors and no standard of reasonableness. *Compare Fowlkes v. Commonwealth*, 218 Va. 763, 766-71, 240 S.E.2d 662, 664-67 (1978) *with Godfrey v. Commonwealth*, 227 Va. 460, 463, 317 S.E.2d 781, 782 (1984); *see also Holliday v. Commonwealth*, 3 Va. App. 612, 615-22, 352 S.E.2d 362, 364-67 (1987). Nothing in this statute authorizes a court to weigh the reasonableness of the Commonwealth's conduct in causing or contributing to a delay. *See* Code § 19.2-243.

When applying the appropriate standard in this case, only two periods of time, those during which the defendant was being psychiatrically evaluated, should be excluded in determining compliance with the statute. The period of time between May 15, 1986, when he was sent to Central State Hospital for evaluation, and July 1, 1986, when he was returned from Central State Hospital to the jail for trial, is expressly excluded by statute. Code § 19.2-243(1). In addition, the period between February 4, 1986, when the court ordered his evaluation by a local psychiatrist or psychologist, and February 20, 1986, when this evaluation was received, should be excluded since it parallels the statutory provision for hospital confinement. The same reason, the Commonwealth's inability to bring the matter to trial during this period, underlies both exclusions. These two periods of time consisted of seventy-six days which, when subtracted from the time between arrest and trial, leaves a total of 203 days, far in excess of the five month maximum permitted by statute. The remaining time between arrest and trial should not be excluded. None of the remaining time is excluded by a statutory exception, nor does the rationale underlying the statutory exceptions call for excluding any other time between arrest and conviction.

The two periods of time excluded by the majority, occurring between the filing of motions for psychiatric evaluations and the entry of orders granting the motions, should not be excluded. The increment of time between the filing of each motion and the trial

court's ruling on each motion, consisting of four days in one instance and thirteen days in the other, was subject as much to the Commonwealth attorney's control as to the defendant's. Once either of the motions was granted, no trial could be held until complied with; however, until the motions were granted, the Commonwealth was free to move to proceed to trial or, if preferred, to a hearing on the motion. Similarly, during the time between the trial court's rulings on these motions and the entry of orders effecting the rulings, the Commonwealth could have expedited the proceedings. The record does not explain why such long periods of time, twenty-nine days in one instance and thirty-seven days in the other, were required for the entry of the written orders carrying out the court's decisions. The Commonwealth attributes these delays to a lack of a resident circuit judge in Clarke County. The statute does not authorize any exception for this reason, nor does it authorize an exception with a similar underlying rationale. Such an exception would cause the standard for a speedy trial to vary within the Commonwealth from locality to locality. More importantly, nothing prevented the Commonwealth's attorney from promptly preparing and presenting orders implementing the judge's decision and, thus, causing the matter to proceed.

In excluding these times from its consideration, the majority does not rely on any existing exceptions. None of this time is excluded by any of the statutory exceptions. *See* Code § 19.2-243. Nor is it excluded by any previously recognized judicial exception. *See Stephens*, 225 Va. at 233, 301 S.E.2d at 27; *Wadley*, 98 Va. at 805, 35 S.E. at 453.

Instead, the majority creates a new judicial exception to the statute. The rationale appearing to underlie this new exception is twofold: the defendant's lack of cooperation with the psychologist, and the fact that the motion seeking his evaluation was brought by him for his own benefit. Neither of these reasons are "in pari ratione" with any of the statutory exceptions.

The defendant's lack of cooperation with the psychologist did not prevent the Commonwealth attorney from moving to bring the matter on for trial. Even though the defendant sought the examination and the trial judge may have found "probable cause to believe that the defendant's actions . . . may have been affected by

mental disease or defect,"[1] the defendant had the burden to prove an insanity defense. *Shifflett v. Commonwealth*, 221 Va. 760, 769, 274 S.E.2d 305, 310 (1981). Therefore, the lack of evidence on this issue impaired only the defense. It did not retard the Commonwealth's ability to proceed. The Commonwealth attorney could have sought to have the matter set for trial or, if preferred, he could have sought to have the defendant hospitalized for examination.

Similarly, the fact that the defendant moved the court for an evaluation did not prevent the Commonwealth attorney from pursuing a trial of the matter. Once the motion was granted and the defendant hospitalized for evaluation, the Commonwealth attorney was powerless to expedite the proceeding, but until then, the Commonwealth attorney was free to seek either to have the matter set for trial or to have the motion brought on for hearing. The ability of the Commonwealth to assure that the proceeding was advancing toward a trial remained intact until the defendant was sent for evaluation.

Had the General Assembly intended for criminal proceedings to come to a halt because a defendant seeks a mental evaluation, it could have readily provided for such an exception. It did not. Although it excluded the time during which a defendant is hospitalized for examination, the General Assembly did not exclude the time during which a motion for such hospitalization might be pending. Presumably, it recognized that the mere filing of the motion did not prevent the Commonwealth attorney from moving the matter forward for trial.

It may appear incongruous for the speedy trial statute to be used to vitiate a criminal conviction of an uncooperative defendant, but such a result will enhance rather than retard the fair administration of justice. Unless the speedy trial statute is construed to count delays such as occurred in this case a court's criminal docket will effectively be placed in the hands of an uncooperative

---

[1] Prior to July 1, 1986, the standard for requiring an evaluation was "probable cause to believe that the defendant's actions during the time of the alleged offense may have been affected by mental disease or defect; however, since then the standard has been "probable cause to believe that the defendant's sanity will be a significant factor in his defense." *See* Code § 19.2-169.5.

defendant. To propose that a court cannot proceed to try a criminal defendant who files a motion for a mental evaluation and then fails to cooperate with the evaluation effectively destroys a court's ability to control its docket. Instead of discouraging delay, the result reached by the majority encourages it.

Although the majority does not expressly accept the reasonableness standard proposed by the Attorney General, it does so implicitly. The majority's analysis weighs the relative fault of the defendant and the Commonwealth attorney, respectively, in causing the delay and concludes that the fault was the defendant's. This is not the standard directed by the General Assembly. Under the General Assembly's scheme, the only question is whether the requisite time has passed and, if so, whether any of that time should be excluded because the Commonwealth attorney was unable to cause the matter to proceed.

In short, the majority's decision dismantles the General Assembly's scheme for assuring a criminal trial without unnecessary delay. It removes the disincentive the legislature placed on the prosecution to take affirmative action to try criminal cases within required time periods. In doing so, the majority discards the General Assembly's underlying standard and implicitly substitutes its own less-precise standard. For these reasons I dissent.