**Salem**

FRED ALEXANDER SHEARER

v.

COMMONWEALTH OF VIRGINIA

No. 0022-88-3

Decided February 6, 1990

COUNSEL

David D. Embrey (Johnson & Cunningham, on brief), for appellant.

Linwood T. Wells, Jr. (Jan F. Hoen, Third-Year Law Student; Richard B. Smith, Assistant Attorney General; Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—Fred Alexander Shearer appeals his convictions of breaking and entering, two counts of grand larceny and three counts of petit larceny. Shearer contends (1) that the Commonwealth violated his statutory right to a speedy trial by not bringing him to trial within five months of his preliminary hearing; and (2) the trial court erred by admitting into evidence a set of keys which was illegally seized from his apartment. We conclude the trial court did not err and affirm the convictions.

Shearer was convicted of all charges by a jury on December 27, 1987. The charges arose from the late night burglary of the Lynchburg Airport on February 18, 1986. He was arrested in late February 1986 shortly after the burglary. Counsel was appointed to represent Shearer. A preliminary hearing was held on May 6, 1986, at which time the district court found probable cause to certify the charges against Shearer to a grand jury. The grand jury returned true bills against Shearer on May 12, 1986. Shearer was

arraigned on July 14, 1986, and trial was set for September 24, 1986. Between the probable cause determination on May 6, 1986, and the trial of September 24, 1986, four months and eighteen days elapsed.

Before trial on September 24, defense counsel moved Judge William W. Sweeney to be allowed to withdraw on the grounds that Shearer had been uncooperative and had continuously requested that she file frivolous motions. Counsel stated that the attorney-client relationship was so unsatisfactory that she felt she could not continue to render effective legal assistance. Counsel told the trial judge that, in her opinion, Shearer was not being candid with the court when he responded, "No, I don't, personally, no," to the court's inquiry about whether he had any problems with the attorney. Counsel reported to the court that she received "countless . . . collect phone calls and more letters than I can read . . . ordering me to do things I think are both frivolous and harmful to his case [in Campbell County]." In direct response to the judge's inquiry whether she thought "under the circumstances" she had been "able to properly prepare his case," she responded,

No, sir, I have not, because—I have not. It's not possible for me to say gracefully all of his complaints about what has—has happened and what he wants done in order to get to what I personally consider is important, Judge.

I have spent five or six weekends and many evenings interviewing witnesses just because I could not get to them in the daytime, answering his calls and was trying to answer his letters.

Shearer acknowledged at the hearing that he had experienced some problems with counsel, but stated that he was satisfied with her representation and wished to proceed to trial. While references were made by Shearer and his counsel to Shearer's dissatisfaction in her handling of the Lynchburg appeals, the hearing and counsel's assessment concerning the attorney-client relationship and her inability to communicate with her client pertained to the Campbell County prosecution. The trial court, after hearing Shearer and his counsel, granted counsel's motion to withdraw and continued the case in order to appoint another attorney to represent Shearer. New counsel was appointed and trial dates

were set on two separate occasions, both of which were continued upon motion of or with the concurrence of Shearer's trial counsel. Shearer contends, and his attorney confirms, that he did not personally consent to the two continuances. A third trial date was set for December 23, 1986, but Shearer escaped from custody on November 24, 1986, and was not recaptured by the trial date.

After Shearer was recaptured he was brought to trial on October 14, 1987. He moved the trial court to dismiss the charges because he was not tried within five months of the probable cause determination as required by Code § 19.2-243. Shearer contends that most of the delay between September 24, 1986, and his trial on October 14, 1987, was caused by his counsel being improperly allowed to withdraw and by two continuances requested or concurred in by his new counsel without his consent. He contends that none of the delay, except that while he was at large, was attributable to him and his escape occurred after he had been deprived of a speedy trial. He asserts that, as a consequence, the Commonwealth failed to try him within five months as required by Code § 19.2-243.

At trial, two employees of Chautauqua Airlines testified that they had secured the Lynchburg airport terminal building on February 18, 1986, prior to leaving around 1:00 a.m. An employee of Airport Limousine testified that when he arrived at the terminal around 5:00 a.m., he found the office doors of National Car Rental and Airport Limousine had been "jimmied." He discovered a metal box lying on the floor. Representatives of businesses located in the terminal discovered a safe missing from Hertz Rent-A-Car, a set of car keys missing from Avis Rent-A-Car, and an unspecified amount of money stolen from the businesses.

Four days later, on February 22, 1986, Officer E. M. Williams answered an alarm call at the Southport Mall in Lynchburg. Williams found a gray Mercedes parked in the mall parking lot. When Williams approached the closed mall, he observed an intruder inside. He gave chase, but the intruder escaped. A check with the Division of Motor Vehicles determined that the Mercedes in the mall parking lot was registered to Fred Alexander Shearer and his wife. Officer W. D. Torbert testified that the Mercedes was seized as part of the criminal investigation and when he conducted an inventory search of the vehicle he found a safe in the trunk, which was identified as the safe stolen from the Hertz

Rent-A-Car office during the airport terminal burglary. A warrant was obtained to search Shearer's apartment for items related to the break-in at the Southport Mall. The warrant specified that the search was for clothing matching that which Officer E. M. Williams had seen the intruder wearing. While searching through a dresser in Shearer's apartment, Officer Viar discovered in one drawer a metal cash box which matched the description of one which had been described at a police roll call as stolen during the airport burglary. Officer Viar opened the metal box and found a set of keys inside which were identified as those stolen from the Avis Rent-A-Car office in the airport burglary. Officer Viar stated that when he arrested Shearer, Shearer stated that he had purchased the metal box to resell but that he knew it had been stolen. He did not identify the alleged seller. At trial, Shearer did not testify. The jury convicted Shearer on all six charges related to the airport burglary.

## I. *Speedy Trial*

Code § 19.2-243 provides that an incarcerated accused held continuously in custody shall be brought to trial within five months after a general district court finds probable cause to believe that the defendant has committed a crime. The Commonwealth has legislatively defined the duty to provide an accused a speedy trial, "and an accused may stand mute without waiving his rights so long as his actions do not constitute a concurrency in or necessitate a delay of the trial." *Moten v. Commonwealth*, 7 Va. App. 438, 441, 374 S.E.2d 704, 706 (1988). Thus, when a defendant has shown that he or she has not been brought to trial within the statutory period, the Commonwealth has the burden to satisfactorily explain the delay or the prosecution will be dismissed. *Godfrey v. Commonwealth*, 227 Va. 460, 463, 317 S.E.2d 781, 782 (1984). Any delay in the trial, however, which is attributable to the defendant will not be counted in determining whether the Commonwealth complied with the statutory speedy trial mandate. *O'Dell v. Commonwealth*, 234 Va. 672, 681, 364 S.E.2d 491, 496, *cert. denied*, 488 U.S. 871 (1988).

Code § 19.2-243 enumerates reasons for a delay which will be attributable to the defendant. The "enumerated exceptions are not all-inclusive; others of a similar nature may be implied . . . . The exceptions, both express and implied, often look to the

defendant's actions which tend to delay the trial." *Cantwell v. Commonwealth*, 2 Va. App. 606, 610, 347 S.E.2d 523, 525 (1986) (citations omitted). One of the statutorily specified exceptions is delay caused by a continuance requested or concurred in by the defendant. Code § 19.2-243(4). Therefore, to the extent that the defendant requested or concurred in any delay, *Corey v. Commonwealth*, 8 Va. App. 281, 284-85, 381 S.E.2d 19, 20-21 (1989), that time will be excluded in determining whether the trial took place within the mandated time period. If the defendant caused the delay through his action, that time will not be considered in computing compliance with the speedy trial statute. *Moten*, 7 Va. App. at 442, 374 S.E.2d at 706.

We find that the Commonwealth met its burden of proving that the delay in bringing Shearer to trial between September 24, 1986, and October 14, 1987, was attributable to the defendant. The statutory speedy trial requirements began to run on May 6, 1986, when the general district court found probable cause to certify the charges. Shearer, who remained incarcerated, was scheduled for trial on September 24, 1986, which would have complied with the five month requirement of Code § 19.2-243. The delay after that date was that caused by the need to replace defense counsel and by the two continuances requested or agreed to by defense counsel without the defendant's consent. Shearer does not contend that the time for which he was a fugitive should be considered.

Shearer argues that the delay caused by the trial court's action in approving counsel's motion to withdraw should not be attributed to him because he did not necessitate the withdrawal of counsel nor did he assent to it. In fact, he emphasizes that he objected to the withdrawal and demanded a speedy trial. Shearer argues that the trial court was not confronted with a situation which required the replacement of trial counsel, and therefore, the continuance caused by the trial court's action must be attributed to the Commonwealth. He argues that the trial court should not be permitted to prejudice his right to a speedy trial simply to accommodate counsel.

A continuance can be granted over a defendant's express objection and still be attributable to him if the delay has been necessitated by circumstances caused or brought about by the defendant. For instance, in *O'Dell*, a continuance, which was

granted over the defendant's demand for a speedy trial, was held attributable to the defendant because he had filed complex pretrial motions which caused delay in order for the trial court to consider and decide them. 234 Va. at 688, 364 S.E.2d at 496; *see also Stephens v. Commonwealth*, 225 Va. 224, 233-34, 301 S.E.2d 22, 27-28 (1983). Also, where a continuance is granted over the defendant's objection in order to conduct a second psychological evaluation which is necessitated because the defendant refused to cooperate with the doctor at the initial evaluation, the delay will be attributed to the defendant. *See Moten*, 7 Va. App. at 444, 374 S.E.2d at 708.

Here, the trial court granted a motion by defense counsel to withdraw based on her statements that Shearer had been so uncooperative that she felt she could not render effective legal assistance to him. Shearer acknowledged that he had some problems with counsel's representation. In this situation, the trial court was confronted with the need to ensure an indigent defendant effective legal representation while at the same time also attempting to ensure the accused his statutory and constitutional rights to a speedy trial. A trial court's determination whether to allow counsel to withdraw depends upon the circumstances of each case and lies within the court's sound discretion. *Payne v. Commonwealth*, 233 Va. 460, 473, 357 S.E.2d 500, 508, *cert. denied*, 484 U.S. 933 (1987); *Snurkowski v. Commonwealth*, 2 Va. App. 532, 535, 348 S.E.2d 1, 2 (1986). One of the circumstances which confronted the court in this case was that withdrawal would necessitate a continuance beyond the five month requirement for trial. "The filing of motions by a defendant will not in every case justify a delay beyond the time required by Code § 19.2-243 to bring him to trial." *Cantwell*, 2 Va. App. at 613, 347 S.E.2d at 526. The trial court specifically found that defense counsel's request to withdraw was necessitated by Shearer's uncooperative attitude. Shearer acknowledged that a problem existed. Of primary concern to the trial court was counsel's assessment that she could not proceed to trial and render effective legal assistance. Under these circumstances, even though a trial court may require a recalcitrant defendant to continue with counsel, the court did not abuse its discretion in permitting counsel leave to withdraw and appointing a replacement counsel, even though it necessarily meant there would be a continuance. Once trial counsel had been permitted to withdraw, the trial court had no reasonable alternative other than to

continue the case until other counsel could be appointed who could confer with Shearer and prepare his defense. Accordingly, we hold that because the continuance was necessary to enable replacement counsel for the defendant to prepare the defense, the continuance was attributable to the defense.

Shearer concedes that his newly appointed counsel requested or concurred in two subsequent continuances.[1] Shearer's contention regarding those continuances is that he was not informed and did not consent to either continuance, and therefore, they should not be attributed to him. Defense counsel may, however, request or concur in a continuance without the consent or presence of a defendant and a defendant will be bound by counsel's assent to the delay. *Butts v. Commonwealth*, 145 Va. 800, 809, 133 S.E. 764, 767 (1926). Code § 19.2-243(4) makes clear that continuances requested or concurred in by a defendant are excepted from the time for computing compliance with bringing an accused to trial. Therefore, the delay caused by the two continuances is attributable to Shearer.

Finally, any delay caused in the trial after Shearer's escape from custody on November 24, 1986, is attributed to him under Code § 19.2-243(4). Thus, we find the Commonwealth has satisfactorily shown that the delay in bringing Shearer to trial beyond the statutorily prescribed time is attributed to his actions and, therefore, he cannot take advantage of the delay by now claiming that his statutory right to a speedy trial was denied.

## II. *Search*

Shearer also contends that the trial court erred in overruling his objection to the introduction of the set of keys found in a search of his apartment by the police. He argues that the keys, belonging to Avis Rent-A-Car, were discovered while the police were conducting a search beyond the scope of the warrant. The warrant was issued to search for clothes matching those which Shearer was suspected of having worn during an unrelated burglary. During the search of a chest of drawers in Shearer's bedroom, a metal cash box was found. When the box was opened, the police found

---

[1] Shearer does not challenge the sufficiency of the trial court orders or trial record to show why his case was continuted or that his counsel concurred in the continuances between September 24, 1986, and December 23, 1986.

keys taken during a burglary other than that being investigated. Shearer contends that the opening of the metal box was not authorized by the warrant because it was not a container which reasonably might contain the items specified in the warrant. Shearer argues that the officer who discovered the keys admitted that when he opened the box he did not expect to find clothes. Thus, since the officers exceeded the scope of the search authorized by the warrant, Shearer argues that the keys should have been suppressed. He also argues that their admission was highly prejudicial to his case. We disagree that the keys were illegally seized.

In determining whether the keys were lawfully seized, we must first decide whether the metal cash box was legally seized. The box could not be seized pursuant to the search warrant because it was not an item specified in the warrant.

▪ Our inquiry, however, does not end there. We must consider whether the seizure of the box and search of it can be validated on other grounds. The Commonwealth argues that the evidence was legally seized under the "plain view" exception to the Fourth Amendment warrant requirement, which provides generally that a law enforcement officer can seize evidence of crime or contraband when it is discovered inadvertently in a place where the officer has a right to be. *Stokes v. Commonwealth*, 4 Va. App. 207, 209, 355 S.E.2d 611, 612 (1987). The "plain view" exception "authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." *Cantrell v. Commonwealth*, 7 Va. App. 269, 282, 373 S.E.2d 328, 334 (1988) (quoting *Illinois v. Andreas*, 463 U.S. 765, 771 (1983)). In order for the "plain view" exception to be applicable, the police must establish: (1) that they were in a lawful position to view and seize the item; (2) the discovery of the evidence in plain view was inadvertent; and (3) the police had probable cause to believe that the evidence seized was seizable—i.e., contraband, the fruits or tools of a crime, or other evidence of a crime. *Id.* at 283, 373 S.E.2d at 335; *see Coolidge v. New Hampshire*, 403 U.S. 443 (1971); *see also Delong v. Commonwealth*, 234 Va. 357, 362 S.E.2d 669 (1987), *cert. denied*, 485 U.S. 929 (1988). We find that the metal cash box was lawfully seized under the "plain view" exception.

The metal box was discovered in a place where the police had a lawful right to be under the authority of the warrant. *See Cantrell*, 7 Va. App. at 284, 373 S.E.2d at 335; *see also Arizona v. Hicks*, 480 U.S. 321, 325-26 (1987). The warrant authorized the police to search for certain items of clothing thought to be in Shearer's possession; the dresser drawer located in Shearer's bedroom was, clearly, a place where such items might be found. The discovery of the box was inadvertent. There is no evidence that the police "knew" in advance the location of the evidence and intended to seize it. *Stokes*, 4 Va. App. at 211, 355 S.E.2d at 613 (quoting *Coolidge v. New Hampshire*, 403 U.S. at 470). Finally, based on a description of a similar metal cash box given to them at a police roll call, the police had probable cause to believe the metal box was stolen property. *See Cantrell*, 7 Va. App. at 283, 373 S.E.2d at 335; *see also Delong*, 234 Va. at 365, 362 S.E.2d at 673. Therefore, we find that the metal cash box, containing the set of Avis Rent-A-Car keys, was properly seized under the plain view exception to the Fourth Amendment.

■ After the metal box was seized, the police opened the box and found the set of keys from the Avis Rent-A-Car office. We need not pause to inquire whether the opening of the box was, itself, a discreet act which required additional fourth amendment authority beyond that found in the plain view exception to the warrant requirement. Shearer lacked standing to challenge the search of the stolen metal box. In order for a defendant to object on fourth amendment grounds to a search and seizure, he or she has the burden of showing that his or her own fourth amendment rights were violated. *Williams v. Commonwealth*, 4 Va. App. 53, 70, 354 S.E.2d 79, 88 (1987); *McCoy v. Commonwealth*, 2 Va. App. 309, 311, 343 S.E.2d 383, 384 (1986). Fourth Amendment protections can only be claimed by one who "has 'a legitimate expectation of privacy' in the property searched or seized." *Wells v. Commonwealth*, 6 Va. App. 541, 549, 371 S.E.2d 19, 23 (1988). *See generally Katz v. United States*, 389 U.S. 347, 353 (1967). A defendant cannot assert a legitimate expectation of privacy in stolen property. *Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1979); *United States v. Dickerson*, 655 F.2d 559 (4th Cir. 1981); *United States v. Hargrove*, 647 F.2d 411 (4th Cir. 1981); *see also Buza v. State*, 529 N.E.2d 334 (Ind. 1988); *State v. Luleff*, 729 S.W.2d 530 (Mo. Ct. App. 1987).

Since the police were lawfully in a place where they had a right to be, discovered the box inadvertently, and had probable cause to believe that the metal box was stolen property, the box was lawfully seized under the plain view exception. Shearer lacked standing to complain about it being opened and searched by the police. Thus, the trial court did not err in admitting into evidence the set of stolen keys from the Avis Rent-A-Car office.

Accordingly, we affirm the trial court's decision.

*Affirmed.*[2]

Duff, J., concurred.

Benton, J., dissenting.

Fred Alexander Shearer was charged with committing felonies in the City of Lynchburg and in Campbell County. He was represented by the same court appointed legal counsel in both jurisdictions. On September 23, 1986, the day before Shearer was scheduled to be tried in Campbell County for statutory burglary, two counts of grand larceny, and three counts of petit larceny, Shearer's court-appointed counsel filed a motion to withdraw. The motion stated that Shearer "is mighty dissatisfied with counsel's representation in Lynchburg felony defenses." The Lynchburg trials occurred in May 1986.

On the day of the scheduled Campbell County trial, Shearer was arraigned for the second time and indicated his readiness to be tried by jury. In response to the trial judge's inquiry, Shearer stated that he was satisfied with his court-appointed counsel. Shearer's counsel then requested to be relieved, stating:

We had a trial on a number of statutory burglaries, three common law burglaries and several grand larcenies in Lynchburg in March — in May, and this man was sentenced on July 2.

Since that time, he has been tried — that was a bench trial — since that time he has been tried by jury in Lynch-

---

[2] Other issues raised by Shearer in this appeal have no precedential or public value, and therefore, are considered and decided in an unpublished memorandum opinion filed with the clerk of this court, from whom it is available upon request.

burg and convicted on all.

I have been [to see] him in the Lynchburg City jail a number of times, received a countless number of collect telephone calls from him and more letters than I can read. In each case, he is ordering me to do things that I think are both frivolous and harmful to his case; and I respectfully request to withdraw from the case — from his representation in Campbell County.

The majority opinion states that Shearer's counsel was referring to difficulties in connection with the Campbell County cases. I disagree. The motion to withdraw unequivocally states that Shearer's counsel believes that Shearer "is mighty dissatisfied with counsel's representation in Lynchburg felony defense" (emphasis added). In addition, the written motion contains no allegations that counsel was unable to prepare adequately for the trial in Campbell County. The motion stated that counsel wanted to be relieved in Campbell County because "counsel . . . believ[ed] that [Shearer] will never be satisfied with her representation and [may] seek appeal alleging ineffective counsel." I believe that counsel's statement to the trial judge related solely to counsel's perceived difficulties with respect to the conduct of the appeals of Shearer's Lynchburg convictions.

Furthermore, the trial judge undoubtedly understood that Shearer's counsel was addressing the difficulties with the Lynchburg appeals. It was the trial judge who then sought to make a connection between the Lynchburg appeals and counsel's preparation for the Campbell County trial:

THE COURT: Have you been able to properly prepare his case under the circumstances?

DEFENSE COUNSEL: No, sir, I have not, because — I have not. It's not possible for me to say gracefully all of his complaints about what has — has happened and what he wants done in order to get to what I personally consider is important, Judge.

I have spent five or six weekends and many evenings interviewing witnesses just because I could not get them in the daytime, answering his calls and was trying to answer his

letters.

He requires justification on my part for everything I have not done for him on the *appeals*. And there is just — there is not enough time for anybody — for me to represent him properly (emphasis added).

Counsel's response should remove all doubt whether the communication difficulties that counsel perceived related to the Lynchburg "appeals" or the Campbell County trials.

Although, in response to the trial judge's inquiry, counsel shifted the basis for the motion to withdraw from the initial allegation, pleaded in the written motion, that Shearer was "mighty dissatisfied" to counsel's alleged lack of preparation, first voiced on the morning of the scheduled trial, I believe that the record does not support the trial judge's granting of the motion to withdraw. Shearer responded to the colloquy between the trial judge and counsel as follows:

MR. SHEARER: . . . . I don't have a problem with Ms. Drake's representation or what not. I wrote some letters and called her several times to indicate some things I wanted done. She said she couldn't do these things because they were frivolous.

Okay. But she didn't give me any kind of valid explanation as to why she would not do them. She just said that it would be harmful in my attack of whatever my appeals or whatnot, and she still has not explained them to me fully so that I can understand what she is trying to do.
THE COURT: Uh-huh.
MR. SHEARER: And I feel like, you know, me being in this position, I should be informed as to what is going on since it directly involves me.
THE COURT: So there have been some problems between you, that's fair to say, isn't it?
MR. SHEARER: Uh — more or less, yes.
THE COURT: All right, would you be — would you be more comfortable having another attorney and having the case continued and having another attorney represent you?
MR. SHEARER: No.
THE COURT: You would not?

MR. SHEARER: No.

Despite Shearer's objection, the trial judge appointed another attorney, who was not present in court, to represent Shearer. Shearer then responded as follows:

> MR. SHEARER: . . . . Your Honor, may I be allowed to speak? I don't feel like this situation is as bad as what everyone is making it out to be, and I feel like this right here is interfering with my constitutional right to a speedy trial.
> THE COURT: Uh-huh.
> MR. SHEARER: And I am — that is my right. Am I right?
> THE COURT: Well, you'll get a speedy trial; and as a matter of fact, I would have no problem in coming back down here and trying the case myself if Judge Johnston wants to switch with me. I really don't — it makes no difference at all.

The judge then continued the case "until further order of this Court." However, no further court orders were entered until December 23, 1986, when the case was again "continued until further Order from this Court" because Shearer "failed to appear."

Upon this record, the trial judge's decision to allow Shearer's counsel to withdraw was plainly wrong and an abuse of discretion. There is no justification shown in this record for granting counsel's motion on the day of trial, particularly when Shearer expressed in open court his satisfaction with his counsel and invoked his right to a speedy trial. The trial judge's action, taken four months and twenty-one days from the date the five month speedy trial requirement began to run, was done with total disregard for the statutory right then being asserted by Shearer. See Code § 19.2-243.

This record contains no evidence upon which to charge Shearer with the delay. Despite trial counsel's claim that Shearer was "mighty dissatisfied with counsel's representation" the motion to withdraw was not filed until the day before trial. In addition, the dissatisfaction that counsel attributed to Shearer concerned the conduct of an appeal of an earlier, unrelated conviction in another jurisdiction. The motion contained no allegation concerning the criminal matter to be tried the next day in Campbell County. Furthermore, on at least three occasions Shearer, in open court,

stated his satisfaction with counsel and his desire to proceed with the trial. The trial judge clearly was aware that Shearer was directly and explicitly invoking his "constitutional right to a speedy trial." In view of Shearer's invocation of this right and his express desire to proceed to trial with his then counsel, it was incumbent upon the trial judge to make further inquiry before accommodating trial counsel at the expense of depriving Shearer of his right to a speedy trial. The bare statement of inconvenience in an unrelated matter by Shearer's trial counsel, made one day before trial, was insufficient justification for circumventing the legislatively mandated speedy trial requirement.

The majority also concludes that the continuance ordered by the trial judge on September 24, the scheduled trial date, was attributable to Shearer and that Shearer's "newly appointed counsel requested or concurred in two subsequent continuances." I believe that none of those continuances can be attributed to Shearer. The record reflects that Shearer demanded a speedy trial on September 24. He did not request a continuance. Because the trial judge erred in permitting Shearer's counsel to withdraw on the day of trial under the circumstances shown on this record, the continuance cannot logically be charged to Shearer.

Shearer asserts that any continuance which occurred after September 24 was without his consent or knowledge. I agree with the majority that Shearer's brief states that Shearer's newly appointed trial counsel "obtained [subsequent] continuances." However, the record reflects that Shearer promptly informed his newly appointed trial counsel that "he wanted the matter brought on for trial." According to Shearer's newly appointed trial counsel, the trial "was scheduled [for] sometime in December." Shearer's newly appointed trial counsel stated only that he concurred in two continuances subsequent to the December continuances. The only evidence in the record concerning the setting of a December trial date is a letter dated October 29, 1986, from the Commonwealth's attorney to Shearer's newly appointed trial counsel. In that letter, written more than five months after the finding of probable cause, the Commonwealth's attorney states "that the . . . case has been continued, with your consent to December 23, 1986." In making the determination whether Shearer's right to a speedy trial was violated, the Commonwealth's attorney's letter cannot be taken to establish that Shearer consented or waived his rights.

After the general continuance was ordered on September 24, 1986, no court order was entered setting a new trial date. The next order in the record was entered on December 23, 1986. In addition, no order has been entered in this case reflecting that Shearer or his counsel consented to a continuance. The letter of the Commonwealth's attorney cannot speak for the trial court. "A court speaks only through its order." *Cunningham v. Smith*, 205 Va. 205, 208, 135 S.E.2d 770, 773 (1964). As the Supreme Court stated in *Woodard v. Commonwealth*, 214 Va. 495, 201 S.E.2d 785 (1974):

> The Attorney General asserts that the July term continuance was similar to one granted on Woodard's motion, which would have been excusable under clause (4) of Code § 19.1-191. This argument is based on the Commonwealth's Attorney's statement at trial that the continuance from the July term to the November term was agreed to in order to benefit Woodard by permitting him to cooperate with law enforcement agents. This position, however, is untenable, for we cannot take cognizance of the Commonwealth's Attorney's statement. The order granting the continuance, containing no suggestion of an agreement, speaks for itself.

*Id.* at 499, 201 S.E.2d at 788. The absence of a court order in this case is equally significant. *See Heflin v. Commonwealth*, 211 Va. 407, 408, 177 S.E.2d 644, 645 (1970) ("[S]ince no court entry upon the record reflects any such continuance by agreement, we cannot accept that finding").

For these reasons and in accordance with the provisions of Code § 19.2-243, I would reverse Shearer's conviction and dismiss the indictment.