UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Raphael

JAVION DEONTE MARTIN

v.        Record No. 1569-23-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
SEPTEMBER 3, 2024

FROM THE CIRCUIT COURT OF KING WILLIAM COUNTY
B. Elliott Bondurant, Judge

(Heather L. Baber, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Robert D. Bauer, Assistant
Attorney General, on brief), for appellee.


A jury convicted Javion D. Martin ("appellant") of robbery resulting in serious bodily

injury, in violation of Code § 18.2-58; use of a firearm in the commission of a felony, in

violation of Code § 18.2-53.1; unlawful wounding, in violation of Code § 18.2-51; and

unlawfully shooting at an occupied vehicle, in violation of Code § 18.2-154. On appeal,

appellant argues the evidence was insufficient to support his conviction for robbery resulting in

serious bodily injury, the jury unlawfully rendered inconsistent verdicts, and the trial court

abused its discretion by sentencing him to 43 years' incarceration with 21 years suspended.[1]

After examining the briefs and record in this case, the panel unanimously holds that oral

argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a);

Rule 5A:27(a). Thus, finding no error, we affirm the trial court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Appellant assigned an additional error to the trial court that he withdrew on brief.

# I. BACKGROUND

"[W]e recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

On November 26, 2021, cousins Caleb and Triston Courtney and Triston's girlfriend, Rachel Owens, drove to King William County for Caleb to "trade a gun." Caleb had arranged the trade through social media with a person he knew only by the Snapchat name, "Tall Slime." Caleb rode in the back seat, behind Rachel, the driver, and Triston rode in the front passenger seat. Triston, who had just been hunting, had with him a 12-gauge shotgun and a .22 caliber rifle. Caleb had an AR-12 shotgun, which he planned to trade for a Glock handgun, lying next to him in the back seat. He also had a nine-millimeter handgun under the cup holder next to him.

When the trio arrived at their destination on Sandy Lane in King William County, "[s]ome guy" approached the parked car and asked for a cigarette, which Triston gave him. Then two more men approached the driver's side of the car and spoke with Caleb through his open window. Caleb testified that he handed his AR-12 shotgun out the window to a tall man,[2] who handed it on to his companion. The tall man then "pulled out the [handgun] that he was going to trade," and gave it to Caleb. Caleb checked the magazine of the handgun for bullets, but it was empty. He then told the tall man, "bye, we're going to get up out of here," at which point the man reached through the window, said, "yeah, give me that shit," and grabbed the gun "that [they] had just traded" "out [of Caleb's] hand." A "scuffle" ensued, after which the tall man was "firing the gun." When Caleb and Triston used their remaining firearms to return fire, the men ran away, taking both the AR-12 shotgun and the handgun.

---

[2] Appellant later testified that he is six feet, five inches tall.

Triston testified that he was using his phone in the front seat during the trade, "letting them do what they got to do" and not "paying much attention." But then he heard a man say, "[g]ive me that shit" and saw the man reaching into the car through the window. Triston stated, "then I turn around and said, yeah, give me it, reaching in." Thinking, "[t]his dude is going to try to rob us," Triston attempted to get out of the car but was shot in the face.

Like Triston, Rachel was "looking on [her] phone" during the transaction. Then she heard someone say, "Yeah, give me that shit," after which she "just heard shots." Rachel turned the car around and called 911 as she drove herself, Caleb, and Triston to a nearby gas station.

Sheriff's deputies arrived at the gas station and found Triston lying on the ground "screaming" and "freaking out." He sustained five gunshot wounds to his face, back, side, and arm, and also suffered a collapsed lung. Caleb was in the back seat of the car unable to move because he could not feel his legs. As a result of the injuries he sustained during the shooting, Caleb can no longer walk.

At the time of the shooting, DeShannan Williams was standing in the yard of her grandparents' house on Sandy Lane. She saw a car drive up the street and park by a light pole. Williams then watched her uncle approach the car and ask for a cigarette. Two other men, whom she "took to be [Deonjay Pollard] and [appellant]," walked past her and also approached the car; Williams testified that she had known appellant "most of his life." Williams heard the men "conversating," and then "heard someone say, 'Well, give me all your shit.'" Then she "saw gunfire" and ran.

Also at the time of the shooting, Harvey Garlick was in his cousin's home on Sandy Lane. He saw a car stop "right in front of the house," after which "somebody walk[ed] towards the car." That person then "started shooting." Garlick later identified appellant as the shooter from a police photographic lineup. Garlick was familiar with appellant, whom he characterized

as a distant cousin, and the police investigator who conducted the lineup testified that Garlick was "certain" about his identification. Garlick wrote on the lineup documentation that appellant was the "trigger man."

After the Commonwealth rested, appellant moved to strike, challenging the credibility of Triston's and Caleb's testimony and arguing that the evidence was insufficient to prove he took anything from Caleb. The trial court denied the motion.

Appellant testified in his own defense. He acknowledged that his Snapchat username was "Tall Slime" and that he arranged to trade his Glock 21 pistol for Caleb's AR-12 shotgun on November 26, 2021. Appellant stated that when Caleb arrived that evening, he and his friend, Deonjay Pollard, walked to the car and spoke to Caleb "and the people in the car." Caleb and appellant traded the AR-12 shotgun and an unloaded Glock 21 pistol. After the trade, Caleb asked if appellant had any bullets for the gun and when appellant said "no," Triston reached for a shotgun and attempted to get out of the car. Appellant reached into his jacket pocket, retrieved his "MP 40" firearm, and "start[ed] shooting and running" because Caleb and Triston were both shooting at him. When asked by the prosecutor whether Caleb shot at him first, appellant stated, "I mean, we were both shooting at each other," and when asked whether Triston shot at him first, appellant responded, "I don't know." Appellant lost the MP 40 pistol in the woods as he ran. He denied saying "give me all your shit," trying to rob Caleb, or taking back the Glock 21 pistol.

Appellant renewed his motion to strike at the conclusion of the evidence. The trial court denied the motion.

The jury convicted appellant for robbery resulting in serious bodily injury to Caleb, use of a firearm in the commission of that felony, unlawful wounding of Triston, and unlawfully shooting into an occupied vehicle. The jury found appellant not guilty of aggravated malicious

wounding and use of a firearm while committing malicious wounding. Appellant neither objected to the jury verdicts nor subsequently moved the trial court to set them aside.

The trial court sentenced appellant to 43 years' incarceration, with 21 years suspended: 30 years' incarceration, with 15 suspended, for robbery resulting in serious bodily injury; 3 years' incarceration for use of a firearm in the commission of the robbery; and 5 years' incarceration, with 3 years suspended, for each of the unlawful shooting and unlawful wounding offenses.

This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Appellant argues the evidence was insufficient to prove he committed robbery,[3] for two reasons. First, he contends that the testimony of both Caleb and Triston was "inherently incredible," because Caleb stated that the Glock 21 pistol lacked bullets but also that appellant fired at him after taking the pistol back, and because Triston seemed to testify both that he, Triston, "said yeah, give it" and that "[a]ppellant said '[g]ive me that shit.'" Second, appellant argues that "[t]he testimony did not substantiate th[e] allegation" that he stole a gun from Caleb, because appellant testified that he did not take the gun and the remaining testimony failed to establish that he took "an item . . . from Caleb."

"Robbery is 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.'" *Pena Pinedo v. Commonwealth*, 300 Va. 116, 122 (2021) (quoting *Butts v. Commonwealth*, 145 Va. 800, 811

---

[3] Appellant's argument on brief addresses only the elements of common-law robbery and does not address the element of "serious bodily injury," as defined by Code § 18.2-51.4 and incorporated by reference in Code § 18.2-58(A). Accordingly, we do not address the element of serious bodily injury.

(1926)). On review of the sufficiency of the evidence of that offense, "the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). We therefore view the evidence "in the light most favorable to the Commonwealth, as the prevailing party below, and determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Farmer v. Commonwealth*, 61 Va. App. 402, 416 (2013) (quoting *Commonwealth v. McNeal*, 282 Va. 16, 20 (2011)). We also must discard any of appellant's conflicting evidence, "and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018) (quoting *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

"In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded [their] testimony . . . are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). We "accept the trial court's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006) (quoting *Walker v. Commonwealth*, 258 Va. 54, 71 (1999)). Witness testimony "is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald*, 295 Va. at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). "In other words, this

Court cannot say a witness' testimony is inherently incredible unless it is 'so contrary to human experience as to render it unworthy of belief.'" *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)). Additionally, contradictory "statements by a witness go not to competency but to the weight and sufficiency of the testimony," *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010) (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)), and thus "[i]t is well established that it is for triers of facts to resolve conflicting accounts within a witness' testimony," *id.* at 719.

Here, there is simply nothing in the testimony of Caleb and Triston so manifestly false or contrary to human experience that no reasonable fact-finder could believe their testimony. Both men were involved in a dynamic robbery and shooting event that resulted in paralytic injuries to Caleb and multiple injuries to Triston. Their respective testimony as to material matters was consistent with each other and with the corroborative evidence provided by other witnesses, including Rachel, and it was within the province of the jury to resolve any inconsistent or contradictory statements in their testimony about the robbery and shooting. Accordingly, there is no basis for this Court to reject the jury's witness credibility determinations or its weighing of the witness' testimony by holding that the witness' testimony was inherently incredible.

As to the evidence that appellant robbed Caleb of a firearm, the evidence at trial, viewed in the light most favorable to the Commonwealth, demonstrated that Caleb, Triston, and Rachel drove to King William County so Caleb could trade "Tall Slime" a shotgun for a pistol. When the trio arrived at the agreed location, appellant, who by his own admission was "Tall Slime," approached the car and engaged Caleb in conversation related to the trade. Caleb and appellant each testified that they did trade the firearms. After the exchange, appellant reached into the car through Caleb's window and said, "give me that shit," a statement Caleb, Rachel, and Triston all heard. Similarly, Williams, who was standing nearby, heard someone say, "give me all your shit." Triston believed

that appellant was "going to try and rob [them]." Appellant snatched the Glock 21 pistol he had just traded out of Caleb's hand, and shots then rang out; Garlick identified appellant as the "trigger man," and appellant himself admitted to firing his MP 40 handgun at Caleb. The testimony of these witnesses, in and of itself, was sufficient to establish that appellant took Caleb's newly-acquired Glock 21 pistol from Caleb's person, with the intent to steal it, and that he accomplished the taking through force and against Caleb's will. *See Pena Pinedo*, 300 Va. at 122 (reciting the elements of robbery). We therefore do not disturb the jury's conviction of appellant for robbery resulting in serious bodily injury.[4]

B. The Jury Verdicts

Appellant contends that the jury's verdict that he was guilty of robbery resulting in serious bodily injury was inconsistent with its verdict that he was not guilty of aggravated malicious wounding. He argues that because the robbery conviction required a finding of serious bodily injury, and he was convicted only of unlawful wounding, rather than aggravated malicious wounding, "[t]he jury finding of guilty on the charge of robbery resulting in serious bodily injury was plainly wrong." We hold that appellant has waived this issue, because he failed to raise it in the trial court.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." *See also* Code § 8.01-384(A) (requiring generally an "objection or motion" to preserve an issue for appellate review). Therefore, "[t]o preserve an issue for appeal, the objecting party must state the objection and its grounds with specificity" at the time of the ruling, a "requirement [that] allows 'the trial judge [to] know the particular point being made in time to do something

---

[4] As noted supra, appellant's argument on brief does not challenge the sufficiency of the evidence that the robbery caused serious bodily injury to Caleb, as defined by Code § 18.2-51.4.

about it.'" *Pui Ho v. Rahman*, 79 Va. App. 677, 688 (2024) (last alteration in original) (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)). In this way, parties and the courts may "avoid unnecessary appeals, reversals and mistrials." *Nelson v. Commonwealth*, 71 Va. App. 397, 406 (2020) (quoting *Neal v. Commonwealth*, 15 Va. App. 416, 422 (1992)).

Here, appellant did not object to the verdicts at trial on the basis that they were inconsistent. And he filed no motion to set aside or other motion with the trial court raising an alleged inconsistency in the verdicts. Instead, appellant presents this argument for the first time on appeal. Accordingly, appellant has waived this issue and we may not consider it.[5]

C. Appellant's Sentence

Appellant argues the trial court abused its discretion when it sentenced him to 43 years' incarceration with 21 years suspended. He contends that this sentence was "arbitrary and capricious" because the evidence demonstrated that "[he] and the victims had comparable culpability." We disagree.

"[W]hether a trial court erred by imposing a particular sentence is reviewed for an abuse of discretion." *Guest v. Commonwealth*, 78 Va. App. 187, 192 (2023). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). Consequently, "once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

---

[5] Although Rule 5A:18 contains exceptions for good cause shown or to enable this Court to meet the ends of justice, "[appellant] has not invoked them, and the Court will not apply the exceptions sua sponte." *Burford v. Commonwealth*, 78 Va. App. 170, 184 (2023).

Here, the trial court sentenced appellant to 30 years' imprisonment for robbery with serious bodily injury, for which the maximum penalty is imprisonment for life. Code §§ 18.2-58 and -10. For use of a firearm in the commission of a felony, which carries a mandatory minimum punishment of three years' imprisonment for a first offense, the trial court sentenced appellant to three years' imprisonment. Code § 18.2-53.1. And for unlawful wounding and unlawful shooting at an occupied vehicle, for each of which the maximum penalty is five years' imprisonment, the trial court sentenced appellant to five years' imprisonment for each offense. Code §§ 18.2-51, -154, and -10. Because these sentences were all "within the statutory range," the trial court did not abuse its discretion, and "our task [of review] is complete." *Thomason*, 69 Va. App. at 99.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*